## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | |
|---|---|
| JOHN DOE<br><br>    Plaintiff;<br><br>    vs.<br><br>THE UNIVERSITY OF TEXAS AT AUSTIN;<br>GREGORY FENVES,<br>*individually and in his official capacity.*<br><br>    Defendants. | Civil Action No.: 1:18-CV-00085<br><br><br><br>**COMPLAINT**<br><br><br><br>**JURY TRIAL DEMANDED** |

### ORIGINAL VERIFIED COMPLAINT

One week ago The University of Texas scheduled a hearing to take place one week from today in which they will once again attempt to kick a student out of school for having sex with an intoxicated student. Plaintiff has made repeated efforts to resolve this matter without judicial intervention. Those attempts were responded to only by Defendants making ridiculous, last-second alterations to their own investigation report. The last alteration was made on January 29, two days ago.

The Complainant cannot remember whether she consented to the sex or not. The University is using this lack of memory and, stunningly the observation that she "act[ed] less physically and socially inhibited than [she] [is] normally" at a party, to conclude that she was incapacitated and therefore couldn't consent to sex, despite unrefuted evidence that she did in fact consent.

1

On the path to a hearing on this matter, Defendants attempted to hide exculpatory evidence, and altered their own report three different times after getting notice that they were about to be sued. The University's efforts to withhold exculpatory evidence and bumbling attempts at the last minute altering of their own report betrays their contempt for fairness and this court's recent guidance that intoxication and incapacitation cannot be the same thing.

The alterations the University made to their report were concentrated to one page. They substituted the word incapacitation with the word intoxication in a sentence which originally read: "[W]hile at the party, [Witness] 2 observed that [Jane] was showing signs of incapacitation by acting less physically and socially inhibited than they are normally.

This is an obvious, albeit inept, smoke and mirrors attempt to make it look like they're not equating intoxication with incapacitation by switching those words. They are continuing to harm Mr. Doe, however, by not correspondingly (with the switching of the words) altering the logical conclusion they came to, which was that intoxication is the equivalent of incapacitation.

Furthermore, the "social inhibition" sentence is the first example the University has used for "[f]actors that lead the investigators to conclude CP was intoxicated to the point of incapacitation…." If in any hearing in which two students had sex after drinking, the standard for incapacitation is merely "diminished social inhibitions," then the

University hearing is merely a façade for a predetermined conclusion and thus, unconstitutionally harmful.

Despite altering this one sentence on page 16 of the report, the University, neglected to alter an identical sentence on the very next page, which still says "incapacitation." UT would like these words to be interchangeable. President Fenves said so himself in a prior lawsuit's appeal letter.

Why would UT scramble to make this change? It doesn't effectively do anything to their analysis since it didn't change their conclusion that she was incapacitated. If diminished social inhibition is *only* evidence of intoxication, but the conclusion is made that the complainant is still incapacitated, then we're back to the University using intoxication synonymously with incapacitation.

The reason they made this change was an attempt to dupe the local judiciary into thinking that they weren't doing exactly what they are doing, which is flouting the admonition from the last time they were in court, that equating intoxication with incapacitation is absurd. True to form, they couldn't even do this effectively as they failed to correct the "error" on the very next page that repeats the University's true belief, that "As included in Appendix 17, while at the party, W2 observed that CP was showing signs of **incapacitation** by acting less physically and socially inhibited than they are normally." Apparently, the University thinks that every bar, club and fraternity or sorority mixer is filled with only incapacitated people.

If UT can't get their story straight on what the definition of incapacitation is after months of contemplation and a recent Federal Court suit and public admonitions on the

same topic from Federal Judge, how in the world are a couple of hormone filled college students supposed to do it after a night of drinking? How is one supposed to prepare for a hearing when the definitions to be used are constantly changing only weeks before the hearing? UT's attempts to disguise their true intentions were so bumbling and inept as to be almost comic relief, where it not part of a duplicitous head-fake to mislead the local judiciary and deny Mr. Doe due process. We respectfully ask that you enjoin this conduct.

## PARTIES

1.      The Plaintiff, John Doe, is an undergraduate student at the University of Texas at Austin. He is a citizen of Texas and may be served through undersigned counsel. At all relevant times he was an undergraduate student at the University of Texas at Austin.

2.      Defendant, the University of Texas at Austin (hereinafter referred to as, UT or the University) is an agency of the state of Texas, and an institution of higher education. UT is located at 110 Inner Campus Drive, Austin, Texas 78705.

3.      Defendant Gregory Fenves is an adult individual and resident of Texas, who at all relevant times was the President of the University of Texas at Austin. President Fenves' place of business is 110 Inner Campus Drive Stop G3400, Austin, Texas 78712.

## JURISDICTION AND VENUE

4.      This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 because the claims arise out of questions of federal Constitutional law under the 5th and 14th amendment.

4

5.     This court has personal jurisdiction over all the parties in this lawsuit because each party listed in the lawsuit resides in Texas.

6.     Venue is proper because the claims arise out of conduct occurring in this district.

## FACTUAL BACKGROUND

7.     Jane Roe and John Doe are undergraduate students at the University of Texas at Austin. They were both 19 years old on the night of April 28, 2017. Prior to this night, John Doe was a virgin.

8.     Jane and John were acquainted through social media, mutual friends, and classmates.

9.     Jane and John attended the same party on the night of the 28th. They both drank at the party, and eventually they decided to leave the party at around 2:00 AM.

10.     They left the party in a friend's car, and both rode back toward Jane's apartment. John and Jane lived nearby one another, and they decided to carpool.

11.     Once they arrived near Jane's apartment, the two got out and John walked Jane to her door. When they reached the door, Jane invited John inside.

12.     After being invited inside, Jane and John had consensual sex together. They were both intoxicated at the time.

13.     The next day, Jane claimed to her friends she couldn't remember anything about the previous night. She told them that she had blacked out at some point during the party the night before. She told them she didn't regain her memory until the moments just before she and John finished having sex.

14.     After discussing the matter with her friends, she eventually decided to report what had happened between John and her to the University of Texas's Title IX Investigation Department.

15.     The University then assigned two investigators, and they began to investigate what happened between John and Jane that night.

16.     The investigators interviewed John and Jane, and two witnesses: Jane's roommate (Witness 1), and Jane's friend (Witness 2). [2]

17.     The investigators determined the following facts:

    a.   After the party, John and Jane were given a ride back to Jane's apartment from Jane's friend, "Witness 2". Witness 2 dropped them off together, outside of Jane's apartment.

    b.   Witness 2 described Jane at the party as: "less socially inhibited," and "giggly and extraverted."

    c.   Witness 2 described Jane as unsteady when she was walking back to the apartment.

    d.   Jane had five drinks over the 6 hour period spanning the party and John and Jane having sex.

    e.   Jane was told by a friend who was not named in the investigation that Jane had vomited at the party. This was not witnessed by John.

---

[2] Witness 1 and Witness 2 are the names assigned to the witnesses by UT's investigators. In order to protect the privacy of the parties, and in order for there to be continuity between the documents in this case, those name have been used here as well.

    f.   Jane blacked out at the party, and did not regain her memory until the final few moments of John and her having sex.

    g.   The next day, John sent Jane a text message apology. Witness 2 had contacted him about the previous night's events, and John inferred Jane was upset because of Witness 2's tone. John told Jane while apologizing, "I thought we were on the same page about everything last night."

18.   University investigators found that John was responsible for sexual assault. They produced an investigation report which concluded an 18 page summary of their findings.

19.   This investigator's memorandum will be used to prosecute John at the impending hearing before the University Hearing officer. The investigator's memorandum is a summary of the facts that cast the events of the night in the most negative light possible to John.

**Sexual Assault and Incapacitation.**

20.   The University General Catalog, Appendix D, is the University's policy on sexual misconduct.

21.   The University defines sexual assault, or more specifically rape as:

"**Rape:** The penetration, no matter how slight, of the vagina or anus with any body part or object, or oral penetration by a sex organ of another person, without the consent of the Complainant."

22.   The Sexual Misconduct Policy defines when consent is not effective:

"Consent is not effective if it results from: (a) the use of physical force, (b)

a threat of physical force, (c) intimidation, (d) coercion, *(e) incapacitation*,

or (f) any other factor that would eliminate an individual's ability to

exercise his/her own free will to choose whether or not to engage in sexual

activity." (emphasis added).

23.     The investigators concluded Jane's consent was not effective because she

was incapacitated.

24.     The Sexual Misconduct policy provides the following definition of

incapacitation:

"**Incapacitation:** A state of being that prevents an individual from having

the capacity to give consent. For example, incapacitation could result from

the use of drugs or alcohol, a person being asleep or unconscious, or

because of an intellectual or other disability."

25.     The University does not provide a definition for the term "capacity." The

University does not provide any other official guidance on how to interpret and apply

their definition of incapacitation. The President of the University however, is on record

equating intoxication with incapacitation.

### Application of Incapacitation to John's case

26.     Based on the investigator's memo and investigation, the sum total of the evidence

that the University had to rely on to reach a conclusion that Jane was incapacitated is:

a.   Decreased social inhibition

8

      b.  Extroverted

      c.  Giggly

      d.  Unsteady on her feet

      e.  Dancing

      f.  Told by an unnamed friend that she may have vomited at the party

      g.  Blacked out

      h.  Came to after being blacked out and was having sex with John.

27.     Due to blacking out, Jane's interviews with the University do not include any information about the act of John and Jane having sex.

28.     Investigators interviewed John and considered a written statement he provided them. John's account of the night did contain a detailed account of Jane and him having sex. In their memorandum, the investigators do not report that they doubted John's credibility relating to his telling of the events in Jane's room.

29.     John told the investigators that Jane was awake and talking to him throughout their sexual encounter. As a result of John's sexual inexperience, he recounted to investigators that he was frequently asking Jane questions throughout their having sex.

30.     John told them that Jane responded verbally with "okay" to him when they changed positions several times during the course of having sex.

31.     On October 23rd, 2017, John was informed that the Title IX investigators were recommending he be suspended for two years for sexual assault.

32.     Pursuant to University policies, John requested a hearing to challenge the finding of the investigators before a University hearing officer.

**Impending Hearing**

33.     A hearing is scheduled pursuant Section 11-600 et seq., of the University's rules in this case for February 7th, 2017.

34.     A disciplinary hearing at UT operates something like an informal criminal trial. The university, John, and Jane, will have the opportunity to make opening statements, to cross-examine witnesses, to give testimony, to call witnesses, to offer evidence, and to make a closing argument.

35.     The weight of the evidence will be considered by the hearing officer and she will decide whether or not a preponderance of the evidence supports a finding of responsibility for sexual assault.

36.     The hearing officer in this case will be Dr. Angela Nonaka. Dr. Nonaka is a professor in the School of Social Work.

37.     John and the Dean of Students have already exchanged witness lists, summaries of what the witnesses will testify about, and documentary evidence prior to the hearing.

38.     The Dean of Students will call the Title IX investigator in this case to testify about the outcome of the investigation, and to testify about the meaning and interpretation of UT's rules, including their definition of incapacitation.

39.     The hearing officer will be required to apply the University's definition of incapacitation to determine whether or not John was responsible for sexual assault.

40.     In the past, the working definition of incapacitation has been testified to by University investigators and the investigator's definition was followed by hearing examiners.

41.     The decision by the hearing officer can be appealed following the hearing to the University President. An appeal can be filed by any party to the hearing (Dean of Students, accused student, or complaining witness).

42.     The President has final authority to reverse or uphold the hearing officer's decision.

### Disciplinary Process and Outcomes

43.     The disciplinary process in this case has required that John act as his own lawyer throughout the investigation. It will continue to require him to act as his own lawyer at the hearing, and in a possible university appeal. At the hearing, he will need to give an opening and closing statement, cross-examine witnesses, and prepare to give his own testimony and respond to cross-examination.

44.     Preparation for this hearing and participating in the disciplinary process up to this point has caused actual damages to John as a result of needing to spend resources to retain counsel and prepare for each step of the University's process.

45.     Being accused of rape, participating in the University's disciplinary process, preparing for this hearing, and later the act of going through the hearing, will continue to cause emotional distress, mental anguish, psychological harm, humiliation, stress, fear, and anxiety to John.

46.     John is substantially likely to lose at this hearing and be suspended for two years. He is substantially likely to lose because the hearing officer will be required to apply UT's vague definition of incapacitation to the facts of this case.

47.     The hearing officer will rely on the investigator's interpretation of incapacitation which conflates incapacitation with intoxication.

48.     John is substantially likely to be suspended by the University President in the event of an appeal for the same reason.

49.     The moment the University's disciplinary process reaches a final determination and suspends John, he will lose his enrollment at UT and be irreparably and significantly damaged.

50.     He will be dropped from the classes in which he is currently enrolled. He will lose the ability to register for the classes he needs to maintain his graduation track next semester.

51.     John will immediately be branded with a sexual assault finding on his transcript.

52.     John will be unable to obtain substitute enrollment at another comparable University with this mark on his transcript.

53.     He will be unable to obtain substitute career-oriented employment with a mark on his transcript and a suspension from UT.

**Objections to Withheld and Redacted Evidence**

54.     When the hearing officer was assigned to hear this matter, John objected to certain evidence being offered against him. The University intended to offer three pages of a Sexual Assault Nurse Examination (SANE) report, without providing a full copy of the report to John. The University also intended to offer text message conversations between Jane and Witness 2, without providing an unredacted copy of the text messages to John.

55.     John objected and the hearing officer sustained his objection. John was provided the evidence that had previous been withheld by the University, and which was never intended to be turned over to John.

56.     The University had initially redacted a long text message from Witness 2 which spanned an entire printed page. The redacted portion of that text message was revealed to include exculpatory information, including a message from Witness 2 to Jane which stated, "1) if you don't want to call it rape, then it isn't rape. Period."

## Alterations to Investigation Report

57.     As a result of the foregoing facts, UT was notified of the potential filing of this lawsuit on January 24th, 2017.

58.     John made, through counsel, repeated attempts to resolve the issues presented in this lawsuit.

59.     On January 26th however, John was sent an amended version of the investigation report, ostensibly to alter what the Defendants perceived to be issues that subjected them to liability in a lawsuit, and to dissuade John from filing suit at all.

60.     In the original investigation report the following sentence was included to describe evidence of Jane's incapacitation: "…[W]hile at the party, [Witness] 2 observed [Jane] was showing signs of *incapacitation* by acting less physically and socially inhibited than they are normally."

61.     On January 26, John was sent a new copy of the 186 page report. UT had made a singled change, and it was to the above sentence. The sentence reads in the January 26, and all future versions of the investigation report that: "…[W]hile at the party, [Witness]

2 observed [Jane] was showing signs of *intoxication* by acting less physically and socially inhibited than they are normally."

62.     On January 29, John was sent another corrected investigation report, this time correcting the dates of the above changes.

63.     Later on January 29, John was sent a third amended investigation report, this time adding a prefatory sentence before the edited sentence above. This entire portion of the report now reads:

> "Factors that lead the investigators to conclude [Jane] was intoxicated to the point of incapacitation are:
>
>  a.     …[W]hile at the party, [Witness] 2 observed that [Jane] was showing signs of intoxication by acting less physically and socially inhibited than they are normally."

64.     Despite the repeated edits to the investigation report, the very next section of the report, which includes further analysis of Jane's capacity to consent, includes the original version of the sentence UT scrambled to change: "…[W]hile at the party, [Witness] 2 observed [Jane] was showing signs of *incapacitation* by acting less physically and socially inhibited than they are normally."

## Cause of Action
### *Procedural and Substantive Due Process – Vagueness*
### 42 U.S.C. § 1983

65.     John incorporates by reference each and every preceding paragraph as if fully restated herein.

66.     John has a protected liberty interest in his enrollment at a public university.

67.     Vagueness implicates both the procedural and substantive prongs of due process.

68.     A vague rule fails to give reasonable notice of the charges against an individual. Failing to give adequate notice is a violation of one of procedural due process.

69.     A vague rule that leads to a suspension or an expulsion is an arbitrary government action, the severity of which makes it unconscionable. Arbitrary and unconscionable government actions that harm individuals violate substantive due process.

70.     Misconduct rules at a public university do not need to be drawn as narrowly as criminal codes of conduct, however university rules cannot specify no standard at all. They cannot be completely without meaning.

71.     A rule can be impermissibly vague if it either does not give a reasonable person notice of the conduct proscribed, or if it does not provide guidelines for enforcement.

72.     UT's definition of incapacitation is circular; it has no meaning; and it specifies no standard. A term cannot define itself.

73.     UT has a history of its officials guessing at, and giving varied, incomprehensible, or absurd meanings of the term incapacitation.[3]

74.     John could not, as a matter of logic, be on notice of what the term incapacitation means in UT's Sexual Misconduct Policy because the definition of the term is meaningless.

---

[3] *Doe v. Fenves, et al., 1:17-cv-00732,* Plaintiff's Original Verified Complaint, pp 9 &22
        ("27. The President determined that "[u]nder University rules, someone who is intoxicated cannot give consent to sexual activity because they are incapacitated.

        84. … [a] University investigator was asked to define incapacitation without using the word 'capacity' in the definition. His answer:
                "A: Sure. So incapacitation would be lacking the ability to give consent based on all the aforementioned ways that one could be incapacitated or lack the ability.")

75.   UT's rule does not provide any guidelines for investigators to differentiate between intoxication and incapacitation.

76.   The definition causes investigators to conflate intoxication with incapacitation because there is no limiting language in the definition.

77.   The open-ended examples that are added to the end of the definition of incapacitation are also meaningless. They do not add any specificity to the rule.

78.   In making the recent alterations to their investigation report, UT has used the words intoxication and incapacitation interchangeably in two otherwise identical sentences. UT's vague definition of consent enables the investigators to conflate intoxication with incapacitation.

79.   UT was placed on notice in a previous lawsuit that equating intoxication with incapacitation was "absurd," and therefore would be a violation of the Plaintiff's constitutional rights.

80.   John has suffered actual damages as a result of the procedural and substantive due process violations resulting from the University's adoption and enforcement of a vague standard of incapacitation.

81.   John continues to suffer ongoing actual damages as a result of his continued prosecution by the University under this vague standard of incapacitation.

82.   John is imminently threatened with damage that cannot be remedied through money damages. If suspended, his career opportunities will be irreversibly diminished.

83.   An injunction after a University suspension becoming final would not adequately protect John from these harms because he would immediately lose his enrollment and be

dropped from the classes in which he is currently enrolled. He would lose his place in classes he will be registered for next semester, and he will lose his graduation track.

**Cause of Action**
***Procedural and Substantive Due Process – Withholding Exculpatory Evidence***
**42 U.S.C. § 1983**

84.     John incorporates by reference each and every preceding paragraph as if fully restated herein.

85.     A familiar requirement of due process in criminal cases is the duty of a prosecutor to notify and provide the defense with any potentially exculpatory evidence.

86.     A University disciplinary process need not live up to all the procedural demands of a criminal prosecution, however the University process cannot disregard fundamental fairness.

87.     Due process must require that the University not procure a conviction for sexual assault, and a punishment by suspension, when it is in possession of potentially exculpatory evidence. The University must be required to provide that evidence to the accused student.

88.     John was only provided the exculpatory evidence that was initially obscured from him in this case because he knew to make an objection about it, and because he had the resources to afford a lawyer to help him do it.

89.     The facts of this case beg the question of what other exculpatory evidence has been hidden from us in this case and other accused students who do not have the ability to retain counsel to assist them through the disciplinary process.

90.     This is an issue which has far reaching fairness implications for all students at the University of Texas. Due process must demand that the University have some policy or system to ensure exculpatory evidence, if known to the University Investigators, is turned over to the accused student prior a hearing.

**Cause of Action**
*Title IX: Selective enforcement.*
*20 U.S.C. § 1681, et seq.*

91.      John incorporates by reference each and every preceding paragraph as if fully restated herein.

92.     A University is liable for gender discrimination under Title IX if its decision to initiate disciplinary proceedings is affected by the student's gender.

93.     The evidence obtained during the investigation in this case indicated that two intoxicated college students had sex after a party. John was intoxicated when he consented to have sex with Jane and vice versa.

94.     The male student was charged and investigated for rape and the female student was not. The reason for this inequity is gender bias.

95.     If the standard for when a student is unable to consent to sex is truly as low as mere intoxication, then the evidence in this case supports the proposition that John was intoxicated and therefore unable consent to sex due to incapacitation.

96.     If both students were intoxicated, and therefore incapacitated, then both students were in violation of University rules. Under that logic they both should have been investigated and threatened with suspension, if the school were not discriminating against

males. If intoxication actually invalidates consent, then in this case the school is only enforcing their rules against the male student

97.     This is intentional gender discrimination under Title IX and it has resulted in disciplinary proceedings being initiated against John and not Jane because of John's gender. The Defendants have caused actual damages to John as a result of their conduct.

**Cause of Action**
***Declaratory Judgment***

98.     John incorporates by reference each and every preceding paragraph as if fully restated herein.

99.     John requests a declaration that: (1) the University's definition of incapacitation is unconstitutionally vague because it does not put a reasonable student on notice of what conduct is proscribed, and because it results in arbitrary punishment being carried about by the University; and (2) the University's failure to turn over exculpatory evidence is a due process violation.

100.    John requests a declaratory judgment pursuant to 28 U.S.C. § 2201 because there is justiciable controversy between John and the Defendants and a declaratory judgment is necessary to prevent future conflict between the parties on the issues herein stated.

**REQUEST FOR A JURY TRIAL**

101.    In accordance with Fed. R. Civ. P. 38, John requests a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

102.    A suspension for two years will cause irreparable harm to John's career, educational opportunities, and goals. A suspension would harm his reputation and cause emotional harm. No legal remedy exists for these injuries.

103.    John is suffering ongoing actual damages from being the subject of a disciplinary action that is being undertaken pursuant unconstitutional sexual misconduct rules.

WHEREFORE, the Plaintiff, John Doe, requests the Court:

a.    On the cause of action under 42 U.S.C 1983 for violations of substantive and procedural due process, retrain and enjoin the Defendants from continuing the disciplinary action against John in order to prevent the ongoing financial and emotion damages John is suffering as a result of being the subject of a sexual accusation; restrain and enjoin the Defendants from continuing the disciplinary action against John to prevent the irreparable damages John will suffer if suspended by the University.

b.    On the causes of action under Title IX of the Education Amendments of 1972, award John damages in an amount to be determined at trial including, past and future economic losses, loss of educational opportunities, loss of career opportunities, emotion distress and psychological damages, plus prejudgment interest and attorney's fees,

expenses, costs, and disbursements, and any other relief at law or in equity to which he may be entitled.

c. On the cause of action for declaratory judgment, a declaration stating: the University's disciplinary action against John does not comply with the requirements of due process; that the University's definition of incapacitation is unconstitutionally vague; and that the University must turn over exculpatory evidence to an accused student.

d. John asks that he be granted all other relief as the Court deems just, equitable, and proper.

Dated: January 31, 2018                    Respectfully Submitted,


/s/ Brian Roark

Brian Roark
SBN: 00794536
Botsford & Roark
1307 West Avenue
Austin, Texas 78701
Telephone: (512) 476 – 1900
Fax: (512) 479 – 8040
brian@brianroark.com

ATTORNEY FOR JOHN DOE

## **VERIFICATION**

STATE OF TEXAS                                     §

COUNTY OF TRAVIS                              §


BEFORE ME, the undersigned authority, on this day personally appeared John Doe who, being by me duly sworn, and deposed and said that he has read the allegations in the foregoing Original Complaint, and each and every fact and matter therein stated is within his personal knowledge and is true and correct.

SIGNED this 31st day of January, 2018.

_John Doe_

John Doe


SUBSCRIBED AND SWORN to before me, this the 31 day of January, 2018.

Karina Barraza Branham

Notary Public

