IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| JOHN DOE, § § Plaintiff, § § v. § § THE UNIVERSITY OF TEXAS AT AUSTIN; DR. GREGORY FENVES, *individually and in his official capacity*, § § § § § § § Defendants. § | CIVIL ACTION NO. 1:18-cv-00085-RP |

**DEFENDANTS' UT AND GREGORY FENVES, IN HIS OFFICIAL CAPACITY, MOTION TO DISMISS UNDER FRCP 12(B)(1) AND 12(B)(6)[1]**

## I.   INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiff's Complaint admits the following: Plaintiff, a male UT student, had sex with a female UT student ("Jane Roe," or the "complainant"); she was intoxicated, and witnesses said she was unsteady and had vomited. First Verified Complaint ("Plaintiff's Complaint" or "Dkt. 1") at ¶ 12, 17. She also blacked out. *Id.* at ¶ 17. The next day, Plaintiff apologized to her. *Id.* After the reported assault, Jane had a rape kit (Sexual Assault Nurse Examination, "SANE exam"). *Id.* at ¶ 54.

---

[1] Plaintiff sued President Fenves in both his official capacity and individual capacity. This motion is filed on behalf of UT and President Fenves, in his official capacity. President Fenves, in his individual capacity, has separate counsel.

Jane filed a complaint with UT. See ¶ 14. The investigators talked to the complainant, Plaintiff, and witnesses. *Id.* at ¶ 16. The University investigated the complaint and set a disciplinary hearing on the matter.[2] *Id.* at ¶ 19. The likely issue for the university disciplinary hearing officer is whether Plaintiff had sex with the complainant without effective consent because she was incapacitated.

UT's disciplinary process has not concluded; thus, Plaintiff has not yet been determined by a hearing officer to have done anything wrong and has not yet been disciplined. Nor has he filed an appeal following a finding that he did anything wrong. The process is still underway. Yet Plaintiff has filed suit and asked this Court to order UT to stop the disciplinary process.

This Court should dismiss this case because it is not ripe. Plaintiff may win his disciplinary hearing. Accordingly, Plaintiff has suffered no injury and none is imminent.

The fact that Plaintiff has suffered no injury also dictates that this Court should dismiss this case because Plaintiff lacks standing. Plaintiff has not been injured and no injury is imminent.

---

[2] The original hearing was set for February 7. But because the investigation report written by the investigators was amended for clarity after John Doe complained about certain wording, the University pulled that February 7 hearing to allow the parties enough time to prepare for the hearing. As of the date of this filing, the hearing has not yet been rescheduled but will likely be scheduled for a hearing in the coming weeks.

Further, even assuming the claims are ripe and Plaintiff has standing, his due process claims fail. First, he asserts that the university kept from him "exculpatory evidence." Yet he states that when he complained about it, he was provided that evidence. Dkt. 1 at ¶55. Accordingly, Plaintiff has no injury associated with this claim; it is moot. Second, he asserts the university's definition of "incapacitation" is unconstitutionally vague. Again, he has no injury. But assuming he does, the legal test is whether a reasonable person would understand that his/her conduct would fall within the definition. Here, Plaintiff alleges he had sex with a student who was unsteady, intoxicated, who had vomited, and who blacked out. Plaintiff's allegations fail to state a plausible claim that the definition of incapacitation is unconstitutionally vague.

Last, the Court should dismiss this case because black-letter law bars several claims. For example, Plaintiff has sued UT under §1983 and has sued President Fenves under Title IX.

## II.   ARGUMENT AND AUTHORITIES

### A. John Doe's claims against UT and President Fenves in his official capacity are not ripe for adjudication.

Ripeness is essential to a court's subject-matter jurisdiction. *United Transp. Union v. Foster*, 205 F.3d 851, 857 (5th Cir. 2000); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992). The lack of either ripeness or

standing can be raised at any time by a party or by the court. *Sommers Drug Stores Co. Employee Profit Sharing Trust v. Corrigan*, 883 F.2d 345, 348 (5th Cir.1989); *see also Cinel v. Connick*, 15 F.3d 1338, 1341 (5th Cir. 1994). "Ripeness separates those matters that are premature because the injury is speculative and may never occur from those that are appropriate for judicial review." *Foster*, 205 F.3d at 857.

Any claim by Doe that the UT disciplinary hearing process will violate his due-process rights is not ripe because the alleged injury is speculative. *See Orr v. University of Texas at Austin*, 2015 WL 5666200, at *2-3 (Tex. App.—Austin 2015, no pet.) (not reported) (affirming dismissal of due process claims for lack of standing and ripeness where student had not yet gone through disciplinary process). Doe has not yet had a disciplinary hearing. Dkt. 1 at ¶¶ 33-42. Thus, he has suffered no injury. He has not been suspended, expelled, or penalized in any way. In the absence of any tangible legal injury for Plaintiff to allege, Doe's claims are not ripe for adjudication. Indeed, Doe may win at his disciplinary hearing.

The contention that Doe may win at his hearing is not just theoretical. In fact, two years ago counsel for Plaintiff represented two male UT students accused of violating UT's sexual misconduct policy and sought to obtain an injunction in Travis County District Court to change the hearing process the

students would undergo.[3] Undersigned counsel argued to that Court that the issue was not ripe because the students had not yet suffered an injury. The Court dismissed the cases. The male students ultimately won their hearings and were not found responsible for sexual misconduct. The same issue is present here: John Doe has not suffered any injury. As such, this Court should dismiss this case for lack of subject matter jurisdiction, as the case is not (and may never be) ripe, pursuant to Federal Rule of Civil Procedure 12(b)(1).

Moreover, the Supreme Court has indicated that courts should not entangle themselves in abstract disagreements about administrative policies and practices and, instead, should let the administrative process run its course. The Court wrote:

> "Ripeness is a justiciability doctrine designed 'to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.'"

*Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 807–08 (2003) (citation omitted). Accordingly, this Court should allow the university process to play out. If Plaintiff loses his disciplinary hearing, appeals to the President,

---

[3] This Court may use judicial notice in adjudicating a motion to dismiss. *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011); *Patterson v. Mobil Oil Co.*, 335 F.3d 476, 481 n.1 (5 Cir. 2003) (taking judicial notice of documents in pending state court proceedings). Accordingly, documents from those proceedings are attached as **Exhibits 1-6**.

loses the appeal, and is sanctioned, he should file his lawsuit *then* and seek injunctive relief to prevent the enforcement of the sanction. At this point, however, the case is not ripe.

**B. John Doe lacks standing to bring this suit. He has not been injured and no injury is imminent.**

Similarly, Plaintiff lacks standing because he has suffered no injury and no injury is imminent. Article III of the Constitution limits the jurisdiction of the federal courts to "Cases" and "Controversies." U.S. Const. art. III, § 2, cl. 1. The reason for a case-or-controversy limitation is to restrain the federal courts from enmeshing themselves in deciding abstract and advisory questions of law. Accordingly, any federal court plaintiff must have case-or-controversy "standing" to assert a claim. *Susan B. Anthony List v. Driehaus,* 134 S.Ct. 2334, 2341 (2014) (citing *Lujan,* 504 U.S. at 560–61. "[S]tanding is perhaps the most important of the jurisdictional doctrines." *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990) (internal quotation omitted).

To establish standing, a plaintiff must show: (1) an actual or imminent, concrete and particularized "injury-in-fact"; (2) that is fairly traceable to the challenged action of the defendant (causation); and (3) that is likely to be redressed by a favorable decision (redressability). *Friends of the Earth, Inc. v. Laidlaw Envt'l. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000). All three elements are "an indispensable part of the plaintiff's case" and the party

seeking to invoke federal jurisdiction bears the burden to establish them. *Lujan*, 504 U.S. at 561. Jurisdiction is "a threshold issue that must be resolved before any federal court reaches the merits of the case before it." *Perez v. U.S.*, 312 F.3d 191, 194 (5th Cir. 2002); *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998).

An injury-in-fact requires "an invasion of a legally protected interest which is…concrete and particularized," not conjectural or hypothetical. *Lujan*, 504 U.S. at 560. Except for conclusory statements, not entitled to deference (*Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005) ("We do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions.")), John Doe has not alleged he has suffered an injury aside from the possible threat of a hypothetical injury that may result from a negative outcome of his disciplinary hearing. Dkt. 1 at ¶¶ 102-103.[4] In fact, John Doe cannot state that any injury is "imminent" because his alleged injury would only materialize if he were found to have violated UT's Sexual Misconduct Policy and exhausted the university appellate procedure.

To the extent John Doe claims he is injured because he has incurred attorneys' fees, attorneys' fees alone are not sufficient to confer standing. *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 108 (1998). Otherwise,

---

[4] Again, to the extent John Doe claims he is injured because he has incurred attorneys' fees, attorneys' fees alone are not sufficient to confer standing. *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 108 (1998).

any litigant could establish standing by retaining a lawyer and incurring fees. The limitation of federal court jurisdiction would be nonexistent.

Because John Doe cannot show that he has suffered an injury or that any such injury is imminent, this Court should dismiss this case for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).

## C. Black-letter law dictates that UT has Eleventh Amendment immunity from Section 1983 claims. Accordingly, the Court should dismiss Plaintiff's 1983 claims against UT.

The Eleventh Amendment to the United States Constitution bars an individual from suing a state in federal court unless the state consents to suit or Congress has clearly and validly abrogated the state's sovereign immunity. *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 670 (1999).

Eleventh Amendment immunity applies to a plaintiff's claims against a state or its agencies brought pursuant to Section 1983. *See, e.g., Quern v. Jordan*, 440 U.S. 332, 341 (1979). Texas has not waived its federal court immunity from suit under civil rights statutes. *Aguilar v. Tex. Dep't of Crim. Justice*, 160 F.3d 1052, 1054 (5th Cir. 1998). Furthermore, it is established law that state entities have immunity from claims brought under Section 1983 because Congress has not specifically abrogated their immunity under that statute. *See, e.g., Quern*, 440 U.S. at 340-55. Finally, the Fifth Circuit and other courts in this district have consistently held that the University is an arm of

the State of Texas and therefore afforded the same immunities as the state. *See Elhaj-Chehade v. Office of Chief Admin. Hearing Officer*, 235 F.3d 1339, 1 (Table) (5th Cir. 2000). Doe himself acknowledges in his Complaint that UT is "an agency of the state of Texas." Dkt. 1 at ¶2. Because the University has not waived its immunity from suit under Section 1983, and because Congress has not specifically abrogated such immunity in Section 1983, this Court lacks jurisdiction to hear Doe's Section 1983 claims against the University. *See Olivier v. Univ. of Tex. Sys.*, 1993 WL 81990, at *1 (5th Cir. 1993) (per curiam) (affirming dismissal under Rule 12(b)(1) of plaintiff's Section 1983 claim against university). Therefore, the Court should dismiss John Doe's Section 1983 claims against UT.

**D. John Doe has not stated any legally cognizable claim for a Section 1983 due process violation against President Fenves in his official capacity.**

The United States Supreme Court has stated that "[s]ince the time of our early explanations of due process, we have understood the core of the concept to be protection against arbitrary action." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 845 (1998). The core of due process is the protection of the individual from the arbitrary action of the government, whether the violation is a denial of fundamental procedural fairness (procedural due process), or the exercise of power without any reasonable justification to serve a legitimate government objective (substantive due process). *Id.* at 845-46.

9

Although students have substantive and procedural rights at school, "§1983 was not intended to be a vehicle for federal court correction of errors" in the exercise of school administrators' discretion that do not rise to violations of specific constitutional guarantees. *Wood v. Strickland*, 420 U.S. 308, 326 (1975) (holding that "§1983 does not extend the right to relitigate in federal court evidentiary questions arising in school disciplinary proceedings or the proper construction of school regulations."); *see also Plummer v. Univ. of Houston*, 860 F.3d 767, 773 (5th Cir. 2017) (stating that "[a] university is not a court of law, and it is neither practical nor desirable it be one."). Indeed, the Supreme Court has stated that a "school is an academic institution, not a courtroom or administrative hearing room." *Bd. Of Curators of University of Mo. v. Horowitz*, 435 U.S. 78, 88 (1978). John Doe's allegations ignore this reality.

1. **John Doe has not stated Section 1983 procedural due process claim against President Fenves in his official capacity with respect to the allegation that UT withheld "exculpatory evidence."**

The remedy for a procedural due process violation is more process. *See Neuwirth v. Louisiana State Bd. of Dentistry*, 845 F.2d 553, 559 n. 12 (5th Cir. 1988); *Perry v. Sindermann*, 408 U.S. 593, 603 (1972). Yet in this case Plaintiff ironically contends at the same time both that (1) he should receive more process because his procedural due-process rights were violated but also that

10

(2) he should not receive the additional process provided for by UT's policy but rather the Court should order the process be stopped. *See* Dkt. 1 at ¶¶ 33-42 and 81-83. Plaintiff's position is nonsensical.

Specifically, John Doe claims that UT withheld "exculpatory evidence" from him, but that after he complained about it, UT gave him that evidence. Dkt. 1 at ¶ 88. As such any alleged procedural due-process violation has been remedied; John Doe now has the evidence he deems "exculpatory." There is no action this Court needs to take to remedy John Doe's alleged injury. If anything, this allegation is evidence that UT's process is working.

Moreover, to the extent he asserts a claim for other students[5] who may have "exculpatory evidence" withheld in their disciplinary hearings, Plaintiff lacks standing to assert due-process claims on behalf of other people. *Warth v. Seldin*, 422 U.S. 490, 499 (1975) (a plaintiff lacks standing to assert the rights of third-parties).

### 2. John Doe has not stated a Section 1983 substantive due-process claim against President Fenves in his official capacity associated with the allegation that UT withheld "exculpatory evidence."

The Due Process Clause "was intended to prevent government officials from abusing their power, or employing it as an instrument of oppression." *Lewis*, 523 U.S. at 840 (quoting *Collins v. Harker Heights*, 503 U.S. 115, 126

---

[5] *See* Dkt. 1 at ¶ 89.

(1992) (internal quotations omitted). Thus, the Supreme Court speaks of the "cognizable level of executive abuse of power" as that which "shocks the conscience." *Id.* at 847. Conduct that shocks the conscience has been described in several ways, including conduct that: violates the decencies of civilized conduct; is so brutal and offensive that it does not comport with traditional ideas of fair play and decency; interferes with rights implicit in the concept of ordered liberty; and is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience. *Doe ex rel. Magee v. Covington Cnty. School Dist. ex rel. Keys*, 675 F.3d 849, 867 (5th Cir. 2012).

Plaintiff asserts that it was a substantive due process violation for UT investigators to withhold "exculpatory evidence" even though the hearing officer ordered that the evidence be provided to Plaintiff and it was. Accordingly, UT's conduct has not risen to the level that it would "shock the contemporary conscience" as required for it to have violated John Doe's substantive due process rights. *Compare Covington Cnty.*, 675 F.3d 867 *with* Dkt. 1 at ¶54-56.

### 3. Doe has failed to allege a procedural or substantive due-process claim associated with UT's definition of "incapacitation"—which Doe claims is unconstitutionally vague.

John Doe also claims that UT's definition of "incapacitation" in its sexual misconduct policy is unconstitutionally vague. Dkt. 1 at ¶¶67-74. A school's

regulation is not unconstitutionally vague if an individual of ordinary intelligence would be on notice that "certain behavior could put them at risk for disciplinary action, and would not have to guess at the regulation's meaning and application." *Osei v. Temple Univ. of Commonwealth Sys. of Higher Educ.*, 2011 WL 4549609 at *16 (E.D. Penn. Sept. 30, 2011), *aff'd*, 518 F. App'x 86 (3d Cir. 2013) (citing *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972)). A school's disciplinary rules do not need to be as detailed as a criminal code. *Bethel School Dist. No. 403 v. Fraser*, 478 U.S. 675, 686 (1986).

In a civil context a "vague standard is one that does not specify *any* standard at all, not one that merely proscribes a wide range of not-specifically-enumerated behaviors." *Houston Fed'n of Teachers, Local 2415*, 251 F. Supp. 3d 1168, 1182-1183 (S.D. Tex. 2017). And a suitably definite rule or regulation is "not rendered unconstitutionally vague simply because it may be unfair or prone to error." *Id*. at 1183. All that is required is that the rule provides "fair warning" that certain conduct is prohibited. *San Filippo v. Bongiovanni*, 961 F.2d 1125, 1136 (3d Cir. 1992) (thoroughly discussing vagueness standard and relying upon Supreme Court standards). The question is not whether the standard has clear ends or beginnings in all possible situations; the key is whether the Plaintiff was on notice that his conduct could fall within the scope of the prohibited conduct. *See Id*. at 1136.

UT defines "incapacitation" as: "[a] state of being that prevents an individual from having the capacity to give consent. For example, incapacitation could result from the use of drugs or alcohol, a person being asleep or unconscious, or because of an intellectual or other disability." Dkt. 1 at ¶24. John Doe complains that this definition is "meaningless" and that UT appears to conflate "intoxication" with "incapacitation." Dkt. 1 at ¶¶75-77. But John Doe does not assert that he was unaware that engaging in sex with a person who is so severely intoxicated that she was unsteady, vomited, and blacked out could be prohibited under the university's regulation. *See Doe v. Baum*, 227 F. Supp. 3d 784, 799 (E.D. Mich. 2017) (dismissing vagueness challenge to university's definition of "incapacitation" where student complaining of assault was "unaware of and unable consciously to perceive, participate in, object to, or give consent to, the sexual activity that ensued").

Further, to the extent John Doe claims that being disciplined for having sex with a severely intoxicated woman who was unsteady, vomited, and blacked out "shocks the conscience", this claim is not ripe. But assuming this Court has jurisdiction, John Doe makes no allegations sufficient to state a claim that UT's conduct of investigating the complaint and sending the matter to a hearing officer "shocks the conscience."

Indeed, John Doe states in his Complaint that Jane Roe told UT's investigators that she "blacked out at some point during the party…[and]

14

didn't regain her memory until the moments just before she and John finished having sex." Dkt. 1 at ¶13. The Complaint further details information the UT investigators were given to indicate that Jane Roe could have been so severely intoxicated as to be incapacitated. *Id.* at ¶¶16-17, 26. There is nothing that would "shock the contemporary conscience" in this case about UT pursuing a disciplinary hearing on sexual misconduct charges against John Doe in these circumstances.

Accordingly, even if this Court finds that it has jurisdiction, the Court should dismiss John Doe's procedural and substantive due-process claims pursuant to Federal Rule of Civil Procedure 12(b)(6).

**E. John Doe has failed to state a Title IX claim against President Fenves.**

Title IX provides an implied private cause of action, but the language of the statute explicitly limits the application of Title IX to *funding recipients*. *See* 20 U.S.C. § 1682. An individual is not a proper defendant under a Title IX claim. *Williams v. Bd. of Regents*, 477 F.3d 1292, 1293-1294 (11th Cir. 2007) ("Title IX does not allow claims against individual school officials; only funding recipients can be held liable for Title IX violations.") (citing *Hartley v. Parnell*, 193 F.3d 1263, 1270 (11th Cir. 1999), and noting that Title IX contains "explicit language limiting liability to funding recipients."). Therefore, in accordance

with black-letter law, the Court should dismiss the Title IX claim against President Fenves in his official capacity.

### F. John Doe has failed to sufficiently allege a selective enforcement claim against UT.

A "selective enforcement" Title IX claim is one where the plaintiff asserts that, "regardless of the student's guilt or innocence, the severity of the penalty and/or the decision to initiate the proceeding was affected by the student's gender." *Yusuf v. Vassar College*, 35 F.3d 709, 715 (2d Cir. 1994) (seminal case on "selective enforcement" claim); *see also Plummer v. University of Houston*, 860 F.3d 767, 777-778 (5th Cir. 2017) (applying but not explicitly adopting this cause of action). In other words, Plaintiff must plead that "a female was in circumstances sufficiently similar" to Plaintiff and that the female was treated more favorably. *See Doe v. Univ. of the South*, 687 F. Supp. 2d 744, 756-757 (E.D. Tenn. 2009) (granting motion to dismiss on selective enforcement claim where suspended male student failed to allege that a similarly-situated female student would not have been subjected to the same disciplinary proceedings). Plaintiff must "demonstrate[] selective enforcement through the identification of a comparator of the opposite sex who was treated more favorably by the educational institution when facing similar disciplinary charges." *See Doe v. Case Western Reserve Univ.*, WL 5522001 at *6 (N.D. Ohio 2015). The comparator cannot be the person who accused the plaintiff. *Id.*

Here, Plaintiff fails to allege any similarly-situated females would have been treated better. *See generally* Dkt. 1. Plaintiff alleges the decision to initiate Title IX proceedings against him was based on gender bias, but fails to plead any plausible facts evidencing *gender* bias by UT. *See generally id.*; *Sahm v. Miami University*, 110 F. Supp. 3d 774, 778 (S.D. Ohio 2015) ("Demonstrating that a university official is biased in favor of the alleged victims of sexual assault claims, and against the alleged perpetrators, is not the equivalent of demonstrating bias against male students."); *Doe v. Cummins*, 662 F. App'x 437, 454 (6th Cir. 2016) (affirming district court's dismissal where plaintiff failed to plausibly allege gender bias as opposed to bias in favor of those reporting sexual assault); *Doe v. Univ. of St. Thomas*, 240 F. Supp. 3d 984, 991 (D. Minn. 2017). The only potential comparator Plaintiff identifies is the complainant—the person who accused the plaintiff; the complainant is not an appropriate comparator in a Title IX selective enforcement claim. *See Case Western*, WL 5522001 at *6. Further, Doe does not allege that he filed a university complaint against any female alleging he was assaulted while incapacitated. *See generally* Dkt. 1. Thus, even his attempt to draw a factual parallel to Jane Roe is without factual support. In sum, Plaintiff's allegations amount to only speculation and tenuous inferences of any bias and are, therefore, insufficient to state a Title IX selective-enforcement claim against UT. *Plotkin*, 407 F.3d at 696 ("We do not accept as

17

true conclusory allegations, unwarranted factual inferences, or legal conclusions."). Accordingly, even if this Court finds it has jurisdiction (i.e., that Plaintiff has standing and ripe claims) the Court should dismiss the Title IX claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

## CONCLUSION

For the above reasons, Defendants respectfully request that the Court dismiss John Doe's claims, with prejudice, and grant all such further relief to which Defendants UT and President Fenves, in his official capacity, may be entitled.

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

BRANTLEY STARR
Deputy First Assistant Attorney General

JAMES E. DAVIS
Deputy Attorney General for Civil Litigation

ANGELA V. COLMENERO
Chief, General Litigation Division

*/s/ Sean Flammer*
Sean Flammer—Lead Counsel
Texas Bar No. 24059754
Christine Smith
Texas Bar No. 24088432
Carl Myers
Texas Bar No. 24046502
Office of the Attorney General
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, TX 78711-2548
sean.flammer@oag.texas.gov
carl.myers@oag.texas.gov
christine.smith@oag.texas.gov
(512) 463-2120 PHONE
(512) 320-0667 FAX
**COUNSEL FOR DEFENDANTS UNIVERSITY OF TEXAS-AUSTIN AND GREGORY FENVES, IN HIS OFFICIAL CAPACITY**

## CERTIFICATE OF SERVICE

I hereby certify that on February 12, 2018 a true and correct copy of the foregoing document was served via the Court's CM/ECT system to the below-listed counsel of record:

Brian Roark
Botsford & Roark
1307 West Avenue
Austin, TX  78701
512-476-1900
brian@brianroark.com
ATTORNEY FOR PLAINTIFF


*/s/ Sean Flammer*
SEAN FLAMMER