## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | |
|---|---|
| JOHN DOE<br><br>     Plaintiff;<br><br>     vs.<br><br>THE UNIVERSITY OF TEXAS<br>AT AUSTIN;<br>GREGORY FENVES,<br>*individually and in his official capacity.*<br><br>     Defendants. | Civil Action No.: 1:18-cv-00085-RP |

## Plaintiff's Response to Defendant's Motion to Dismiss

Defendant's Motion to Dismiss should be denied because Plaintiff has stated claims for due process violations resulting from University's disciplinary process, and for discrimination under Title IX.

Plaintiff's claims are ripe for review because the facts are as developed as they ever will need to be to answer the legal questions presented by the Plaintiff's Complaint.

Plaintiff has standing because he has sustained actual damages caused by UT's decision to initiate disciplinary proceedings against him, sustains ongoing damages so long as he is subject to UT's disciplinary process, and is under the real and immediate threat of irremediable damages if he is ultimately suspended for two years from the University.

1

## I.      Post-filing Factual Developments

After Plaintiff filed his Original Petition, he was informed by UT that the hearing originally scheduled for February 7th, 2018 was cancelled. After discussion with representatives at UT and opposing counsel, it was determined that the disciplinary action against Plaintiff has been reset to the "investigation phase."

Due to UT's repeated last second amendments to their investigation report, as described in Plaintiff's Complaint, UT's procedures require, as a formality, that the disciplinary process be reset and a new investigation report be issued before a hearing in Plaintiff's case will take place at the University.

As of this filing, a new report has not been issued and a new hearing has not been set. However, after discussion with opposing counsel, it is only a matter of time until a new report is created and a new hearing is set. The disciplinary case against Plaintiff is still active, and based on representations made by opposing counsel, nothing about UT's recommended sanction, factual allegations, or standard of incapacitation will change.

Given the University's stated working definition of incapacitation as "diminished social inhibition," (paraphrasing) and the fact that the evidence is clear that the complainant had diminished social inhibition (Doe's testimony established this), then the future sham hearing provided by the University is really a fait accompli of being labeled a rapist and suspension from the University. For Mr. Doe and any other student who consents to sex after a couple of drinks. The hearing itself is not necessary to establish a

violation of Institution rules given the University's ad hoc and unconstitutional definition of "incapacitation."

Therefore, these factual developments to not affect the judiciable controversy presented by Plaintiff's Complaint, and the Defendant's Motion to Dismiss should be denied. Plaintiff is sustaining actual, ongoing damages as a result of the continued disciplinary action against him. Using the University's interpretation of incapacitation, the result of the hearing is a mere formality.

## II. Plaintiff has stated a justiciable case and controversy under Article III. Plaintiff has shown actual, as well as imminent threats of injuries, and his case is ripe for adjudication.

### A. Ripeness

Ripeness is a justiciability doctrine that is designed to prevent courts from "entangling themselves in abstract disagreements." *National Park Hospitality Ass'n v. Dept. of Interior*, 538 U.S. 803, 808 (2003).

The standard for considering a challenge to the ripeness of claims involves applying a two-part test. *Id* at 809. The court should determine whether the issues are fit judicial decision, and whether the Plaintiff has shown a sufficient hardship that would result from withholding adjudication of the issues. *Id.*

*National Park*, a ripeness case quoted by the Defendants, considered a challenge to the facial validity of a National Park regulation, and evaluated the ripeness of the Plaintiffs' claims under this two-part framework. *Id.* Under the first prong of the test, the

court explained that "fitness" concerns itself with whether or not the facts are sufficiently developed to enable a judicial determination. *Id.*

Under the fitness prong, the court decided that even though the regulation being challenged had not yet been enforced against the Plaintiffs, the purely legal question of statutory interpretation that the case presented, was "as 'fit' for judicial determination," as it ever was going to be. *Id.* The first prong of the test was satisfied.

The Court in *National Park* however, stopped short of performing a detailed application of the second prong of the test, and instead skipped forward to their ultimate decision to dismiss the case based on the Plaintiff's lack of standing to sue. *Id.*

In a later Fifth Circuit case applying the holding in National Park however, the court did perform a full ripeness analysis, and it found a hardship. *Roark & Hardee v. City of Austin*, 522 F.3d 533 (5th Cir. 2008) (holding that *if* the Plaintiffs were prosecuted and punished under a new city ordinance they would sustain irreparable harm.) The Plaintiffs in that case made a pre-enforcement facial challenge to the validity of a city ordinance for vagueness. *Id.* Similar to *National Park*, the court found the issues presented to involve purely legal questions and the first prong of the ripeness test was satisfied. *Id.* The court then went on to reason, "Plaintiffs have shown the real possibility of irremediable adverse consequences were we to deny review, Plaintiffs have shown hardship." *Id* at 545.

The logic used by the courts in these cases is directly applicable here. Plaintiff has raised questions in his Complaint where all the facts and events necessary to enable judicial determination have already taken place. The questions are: 1. is the UT definition

of incapacitation vague to the extent that it violates procedural and/or substantive due process?; and 2. was the decision to initiate disciplinary proceedings against the Plaintiff the result of gender bias? Plaintiff's Original Verified Complaint ("Dkt. 1") at ¶ 65-83, 91-97.

No further factual development is necessary to answer these questions. The University rules are fixed, and the fact that John is about to be subject to a disciplinary action pursuant to that rule is known. *See generally* Dkt. 1. The factual allegations giving rise to that disciplinary action are also known. *Id.* If UT's interpretation of the term incapacitation encompasses intoxication, then the outcome of the hearing is a foregone conclusion. It is undisputed in the facts underlying the sexual assault case that both parties were intoxicated that night. There is no doubt as to the outcome of the hearing if all that UT needs to prove is that the complaining witness was intoxicated.

In this case, Plaintiff has also shown that there is a hardship. There is a real possibility that John will be suspended for two years, and that he will incur "irremediable adverse consequences" as a result. Dkt. 1 ¶ 33-41. A delay in education in the absence of a comparable substitute is an irreparable harm. *See Fisher v. Texas*, 556 F.Supp.2d 603, 609 (W.D. Tex. 2008) (Holding that a delay in obtaining admission to a public school can be irreparable when a person has no comparable opportunities elsewhere). He would lose opportunities that he could never get back. He would lose time, and his scholastic reputation would be forever diminished: he would need to explain this delay in his education to any employers or graduate programs to which he may eventually apply.

5

Plaintiff has also shown that there is current hardship. If required to continue to participate in UT's disciplinary process he will continue to suffer injuries related to his participation in that process. *See infra Part II.B. Standing.*

Plaintiff's claims of due process violations related to vagueness, and the claim related to Title IX discrimination are therefore ripe for adjudication because they pass the two part test for ripeness.

## B. Standing

To establish standing a Plaintiff needs to show an injury-in-fact. *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992). In addition to being concrete and particularized, and injury-in-fact must be either "actual or imminent." *Id* at 560. Defendants have asserted in their motion that Plaintiff has not shown actual injuries, or the imminent threat of injury. Defendants' UT and Gregory Fenves, in his official capacity, Motion to Dismiss under FRCP 12(b)1 and 12(b)6 ("Dkt. 7") at 6. The facts alleged in Plaintiff's Complaint show both.

To establish standing, the injury or the *threat* of the injury must be both "real and immediate." *Roark & Hardee* at 542. The law does not require that a real and immediate *threat* of an injury be without any unresolved contingencies. *Id.* In *Roark & Hardee*, the Plaintiffs faced a "real and genuine" threat of criminal prosecution under a city ordinance which they alleged was facially invalid. *Id* at 541. The court held the "significant threat of prosecution" was enough to confer standing *Id* at 543.

John Doe's case involves a threat even more real than the substantial threat of prosecution in *Hardee*. Dkt. 1 ¶ 33-42. It involves the active prosecution of the Plaintiff under a university standard of sexual assault that is unconstitutional. *Id.* The prosecution of the Plaintiff by the University is not merely threatened, the disciplinary action is pending its conclusion. *Id.* In this case, where the University will only need to prove the complaining witness was intoxicated to enforce a suspension for sexual assault, the hearing outcome is not uncertain. When John is suspended after the University hearing takes place then clear, significant, and irreparable injuries result. Dkt. 1 at ¶ 43-53. Even a real and immediate threat of irreparable injury is enough to confer standing on its own, and in this case there is more. *See Roark & Hardee* at 543.

In addition to this threat of injury however, Plaintiff has also sustained actual injuries, and continues to sustain more injuries so long as he is subject to the University's disciplinary process. Dkt. 1 at ¶ 81. A prosecution by the University for Sexual Assault under Title IX itself harms the accused student, irrespective of its outcome. It causes mental and emotion damage from being labelled a rapist, loss of opportunities as a result of the uncertainty the process injects into his future, and significant monetary costs as a result of needing to be able to advocate for himself in the University's disciplinary process.

Typically, the largest cost associated with needing to advocate for oneself against the University is the cost of obtaining an advisor to guide the accused student through the University's disciplinary process. In this case, Plaintiff's advisor was an attorney, and

those attorney's fees are damages that Plaintiff has sustained as a direct result of the Defendant's conduct.

These damages are not "attorney's fees" in the usual sense which cannot confer standing. *See Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 108 (1998) (holding that reimbursement for the costs of litigation alone cannot confer standing.) They are not "attorney's fees" in that sense because they are not incident to this or any litigation. They have nothing to do with this litigation. In UT's disciplinary process the accused student is expected to be his own advocate. Dkt. 1 at ¶ 34. The need to retain an advisor to guide Plaintiff through the disciplinary process is a direct and foreseeable result of subjecting the Plaintiff to the disciplinary process.

In this case, without effective guidance from an advisor, the disciplinary process would have failed on a basic level. Dkt. 1 at ¶ 54-56. The University would have withheld significant and exculpatory evidence from the Plaintiff. *Id.* Plaintiff's advisor helped him object to the evidence being offered against him at the hearing and the University was required to turn over evidence that the Defendants were otherwise going to withhold. *Id.*

An undergraduate college student would never have known to make an objection in this circumstance. Since Plaintiff did have an attorney however, he did object. According to the Defendants, this is UT's process "working." Dkt. 7 at 11. If that is the process working, it would seem then that retaining an attorney is an important requirement of that process.

These costs that the Plaintiff incurred to retain an attorney therefore, are actual damages that confer standing. They are a direct and foreseeable result of the Defendants action to charge John with violating the school's sexual assault policy, and in this case Plaintiff's retaining an attorney turned out to be necessary to prevent the process from failing on a basic level.

The costs that Plaintiff occurs as a result of needing to retain an advisor for help during the University's disciplinary process are ongoing. They will continue so long as the University has an active disciplinary action pending against the Plaintiff.

Plaintiff has standing sue for both of these reasons. The threat of irreparable harm confers standing, as does the ongoing monetary damages that the Plaintiff sustains as a result of the active disciplinary action against him.

### III. Plaintiff has stated a § 1983 Due Process claim against President Fenves in his official capacity, and a Title IX selective enforcement claim against the University of Texas.

### A. Rule 12 Pleading Standard

To overcome a motion to dismiss under Rule 12(b)(6) a Plaintiff must only raise his right to relief beyond a speculative level. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atlantic Corp. Twombly*, 550 U.S. 544 (2007)). Plaintiff must allege sufficient facts which, when taken as true, create the reasonable inference that each material point necessary to sustain a recovery exists. *Id.*

Plaintiffs have alleged sufficient facts to overcome this burden and

the Defendants' Motion under Rule 12(b)(6) should be denied.

## B. Vagueness

A school cannot justify the punishment of a student under rules that are so vague they are completely absent of meaning. *See Marco Outdoor Adv., Inc. v. Regional Transit Auth.*, 489 F.3d 669, 672 (5th Cir. 2007) (holding that an egregious government action is barred by the requirements of substantive due process even if implemented by fair procedures); *and Bethel Sch. Dist. No. 403 v. Fraser*, 478 U.S. 675, 686 (1986) (implying school disciplinary policies must be held to some standard of specificity, although not to the same degree as criminal laws.). Rules that have no meaning invoke both the substantive and procedural prongs of the due process guarantee. *Papachristou v. City of Jacksonville*, 450 U.S. 156, 162 (1972). An arbitrary government action offends substantive due process, and standards of conduct that have no meaning offend the notice requirement of procedural due process. *Id.*

A student is responsible for "rape" under University rules if he or she has sex with a person when they are unable to consent due to "incapacitation." Dkt. 1 at ¶ 21-22. The University rules state that incapacitation is "a state of being that prevents an individual from having the capacity to consent." *Id.* This definition is logically meaningless because it is circular; the root of the word incapacitation has been used to define the term.

Defendants admit in their motion that the University cannot provide rules which state no standard at all. Dkt. 7 at 13. This rules does provide no standard at all. The plain language of the rule is a nullity. A rule which essentially states,

"incapacitation is when you don't have capacity," provides no more descriptive value as to the meaning of incapacitation than would a blank space on the page.

Plaintiff has stated that he does not know what UT's standard of incapacitation means, because nobody could know what UT's standard of incapacitation means. Dkt. 1 at ¶ 74. Anyone reading the rule, trying to follow the rule, or enforcing the rule must necessarily guess at what the term incapacitation means in UT's rules. Plaintiff has referred to repeated instances of the Defendants engaging in exactly that type of guesswork. Dkt. 1 at ¶ 73 (quoting the President of the University and a Title IX department investigator giving different definitions of the term "incapacitation" during the adjudication of the same sexual assault accusation).

Defendants have suggested that the "key is whether the Plaintiff was on notice" that his conduct could be against the University's rules. Dkt. 7 at 13. He wasn't. A meaningless rule does not provide notice. Moreover, Plaintiff's alleged conduct was that he had sex with a female student who was intoxicated. Dkt. 1 at ¶ 26; Dkt. 7 at 14. Nobody is on notice that having sex with an intoxicated person is a rule violation. It is not illegal, not immoral, and not at all abnormal in the context of 18-22 year old college students.

*Doe v. Baum*, cited by the Defendants illustrates this point. Dkt. 7 at 14. In *Baum* the court dismissed a vagueness challenge referencing "fair notice" because the accused student had sex with a person who was "unaware of, and unable consciously to perceive, participate in, object to, or give consent to, the sexual

activity that ensued." *Doe v. Baum*, 227 F. Supp. 3d 784, 799 (E.D. Mich. 2017). In other words, the Plaintiff in *Baum* was accused of having sex with a female student when she was unconscious.

The present case is not one where the allegation is that Plaintiff had sex with the complaining witness while she was unconscious like in *Baum*. Dkt. 1 at ¶ 26. Having sex with someone who is unconscious is obviously sexual assault. It is a criminal offense, and everyone has fair notice of that. Plaintiff in this case however, is being prosecuted for sexual assault because he had sex with another student who was intoxicated. *Id.* If the University wants to make it against the rules for students to have sex while they are intoxicated, then they need to give their students, including Plaintiff, fair notice of that. The University's rules failing to provide fair notice that having sex with an intoxicated person could be a violation of university rules is a procedural due process violation.

The University's rules failing to provide any meaningful standard of incapacitation is a substantive due process violation as well. The punishment sought, and the circumstances incident to this disciplinary action raise the Defendants conduct to a substantive violation. It shocks the conscious that the University would so recklessly, yet at the same time so zealously, pursue a punishment that causes such significant harm to the Plaintiff for the rest of his life. Plaintiff has alleged facts which show the University withheld exculpatory evidence and made last second alterations to the shoddy logic and analysis in their investigation report, all in an effort to enforce a rule which specifies no standard at all. Dkt. 1 at ¶ 54-64. This

conduct is shocking. The University has the Plaintiff's future squarely in the palm of

their hands in this disciplinary process, and the fact that the University would to

these great lengths to enforce a rule to which they themselves cannot meaningfully

define when asked is unconscionable.

The facts alleged in Plaintiff's Complaint show that the University's rules

provide no meaningful definition of the term incapacitation, and that Plaintiff is

being threatened with suspension for conduct that he had no notice could have been a

rule violation. These facts raise the Plaintiff's probability of relief above a

speculative level and the Defendant's Motion should be denied.

## C. Selective Enforcement

Plaintiff's Complaint has also alleged sufficient facts to give rise to the

reasonable possibility of success on the merits of a Title IX discrimination claim.

Title IX liability for disciplining a student at a covered university can occur

in two circumstances. *Plummer* at 777 (citing *Yusef v. Vassar Coll.*, 35 F.3d 709,

715 (2d. Cir. 1994)). The circumstance raised by the facts in Plaintiff's Complaint

is "selective enforcement." *Id.*

The selective enforcement framework does not consider the students

culpability, but asks whether the University's "decision to initiate [disciplinary]

proceedings," was "affected by the charged student's gender." *Id.*

Recently the Second Circuit held that a student was permitted to proceed on

Title IX claims under this general framework when he alleged he was wrongfully held

responsible for sexual assault by his school, and the school was "in the midst of a

public campaign criticizing its alleged weak response to female students' complaints of sexual assault by males." *Id.* at 778 (citing *Doe v. Columbia Univ.*, 831 F.3d 46, 50-59 (2d. Cir 2016). The court reasoned it "is entirely plausible that the University's decision-makers and its investigators were motivated to favor the accusing female over the accused male, so as to protect themselves and the University from accusations that they had failed to protect female students from sexual assault." *Columbia* at 57.

Every public institution in this country is under the microscope of public opinion regarding the way they handle sexual assault accusations. The Defendants have prioritized their standing in the court of public opinion over fairness toward male students in their disciplinary process. When these sort of political motivations manifests themselves as bias against male students, that conduct is actionable, intentional gender discrimination under Title IX. *Columbia* at 50-59.

The facts alleged in Plaintiff's Complaint raise the probability of his right to relief under Title IX above a speculative level. The University chose to enforce their sexual assault policy against the male student and not against female student in this case. However, the facts in Plaintiff's Complaint show that two intoxicated students had sex in the complaining witness's bedroom that night. Dkt. 1 at ¶ 12. If the University's standard is that intoxication alone voids freely given consent, then Plaintiff was unable to consent under that standard as well.

The University did not so much as investigate Plaintiff's intoxication and capacity to give consent. The University's proceeding against the Plaintiff and not the female student is a result of gender bias.

14

Defendants have argued that the comparator in a Title IX selective enforcement claim cannot be the accusing student, but there is no good reason for that, and the Defendants offer none. The accusing student in a case like this is the best comparator for a selective enforcement claim because two students could never be in more identical circumstances.

## IV.    Conclusion

For these reasons the Defendants Motion to Dismiss should be denied. Plaintiff requests that the court enter an order denying the motion as such, and grant Plaintiff any and all further relief to which Plaintiff may be entitled.

Respectfully Submitted,

/s/ Brian Roark

Brian Roark
SBN:
00794536
Botsford & Roark
1307 West Avenue
Austin, Texas 78701
Telephone: (512) 476 – 1900
Fax: (512) 479 – 8040
brian@brianroark.com

ATTORNEY FOR JOHN DOE

**Certificate of Service**

I certify that on February 26, 2018 the foregoing document was served was filed and served via the Court's CM/ECF document filing system, which provided a copy to counsel for Defendants.

Sean Flammer
Christine Smith
H. Carl Myers
Office of the Attorney General
300 W 15th Street
Austin, TX 78701
(512) 463-2120
Sean.flammer@oag.texas.gov
Christine.smith@oag.texas.gov
Carl.mysers@oag.texas.gov
*Attorneys for Defendants UT
and Gregory Fenves*

*/s/ Brian Roark*
Brian Roark