**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| JOHN DOE<br><br>    Plaintiff;<br><br>    vs.<br><br>THE UNIVERSITY OF TEXAS,<br>AT AUSTIN;<br>GREGORY FENVES,<br>*individually and in his official capacity.*<br><br>    Defendants. | Civil Action No.: 1:18-cv-00085-RP |

## <u>MEMORANDUM OF LAW IN SUPPORT OF</u>
## <u>MOTION FOR PRELIMINARY INJUNCTION</u>

Brian Roark
SBN: 00794536
Botsford & Roark
1307 West Avenue
Austin, Texas 78701
Telephone: (512) 476 – 1900
Fax: (512) 479 – 8040
brian@brianroark.com

TABLE OF CONTENTS

INDEX OF AUTHORITIES ............................................................................ iii

FACTUAL BACKGROUND ............................................................................. 1

ARGUMENT

    A. Plaintiff has a substantial likelihood of success on the merits .............. 3

        i.  The University's standard for incapacitation is
           unconstitutionally vague ................................................... 4

        ii.  The University was biased against John Doe because
           he is male ......................................................................... 7

    B. In the absence of an injunction Plaintiff will suffer
       irreparable injury ................................................................................. 9

    C. The injury to the Plaintiff will outweigh any harm
       to the non-movant ............................................................................. 10

    D. A preliminary injunction would not harm the public interest ............. 12

CONCLUSION .............................................................................................. 12

CERTIFICATE OF SERVICE ......................................................................... 13

## INDEX OF AUTHORITIES

**CASES**                                                                 **PAGE**

*Bethel Sch. Dist. No. 403 v. Fraser*, 478 U.S. 675
(1986) …………………………………………………………….....................4
*Doe v. Columbia Univ.*, 831 F.3d 46
(2d. Cir 2016)……………………………………………………….......................8
*Deerfield Med. Ctr. v. City of Deerfield Beach*, 661 F.2d. 328
(5th Cir. 1981) …………………………………………………………...…10
*Fisher v. Texas*, 556 F.Supp.2d 603
(W.D. Tex. 2008) ……………………..……………………………………10
*Houston Federation of Teachers, Local 2415 v. Houston Independent Sch. Dist.*, 251 F. Supp. 3d 1168
(S.D. Tex. 2017) …………………..……………..……….…………4
*Marco Outdoor Adv., Inc. v. Regional Transit Auth.*, 489 F.3d 669
(5th Cir. 2007) ………………………………………………...…………..4
*Nevada v. U.S. Dep. of Labor*, 218 F.Supp.3d. 520
(E.D. Tex. 2016) …………………………………………………………….4
*Papachristou v. City of Jacksonville*, 450 U.S. 156
(1972) …………………………………………………….………...….....5
*Plummer v. University of Houston*, 860 F.3d 767
(5th Cir. 2017) …………...……………………………….....................8
*Roark & Hardee v. City of Austin*, 522 F.3d. 533
(5th Cir. 2008) …………………………………………..……………….13
*Tun v. Whitticker*, 398 S.W.3d 899
(7th Cir. 2005) ………………………………………………...……….7
*Valley v. Rapides Parish School Bd.*, 118 F.3d 1047, 1051
(5th Cir. 1997) ….…………………………………………..3, 11, 12
*Yusef v. Vassar Coll.*, 35 F.3d 709
(2d Cir. 1994) ……………………………………………………..8

## I.   FACTUAL BACKGROUND

In April of 2017, Plaintiff John Doe was accused of sexual assault by another student at the University of Texas. The accusation was that John had accompanied the complaining witness back to her apartment one night after a party. At her apartment, the complaining witness alleged that John had sex with her without her consent. She reported this to the Austin Police and the University of Texas. She never made any allegation that force or violence was used to compel her consent, and she never alleged she was unconscious or physically unable to consent. All criminal charges relating to this report were rejected. The University of Texas however, decided to proceed with a disciplinary action against John on the grounds that he had committed sexual assault, in violation of the University's rules, by having sex with the complaining witness when she was "incapacitated"

John disputed this action by the University, and has exercised his right to request a hearing on the facts of the case at the University. The hearing will function like an informal trial at UT where he will need to advocate for himself, give testimony as a witness, and cross-examine witnesses against him. The purpose of the hearing will be to answer one, narrow question: Was the complaining witness "incapacitated" under University rules when she and John had sex? John has no practical way to win this hearing because the University's definition of incapacitation is unintelligible, and Defendants wrongfully interpret this unintelligible rule to conflate intoxication with incapacitation, despite being on notice that doing so is absurd.

1

This lawsuit was originally filed just prior to John's hearing which was scheduled to take place on February 7, 2018. After this lawsuit was filed however, Defendants cancelled the original hearing, and sent John's case back to the investigation phase at the University. This was done presumably in an attempt to correct some of the problems with the investigation that were raised by this lawsuit.

On May 1, 2018, John was notified that the re-investigation had concluded and a new investigation report had been issued. He was provided the new report on that date. He was informed that the University is once again planning to suspend him for two years, based on the outcome of the investigation which found him responsible for sexual assault by incapacitation. John has again requested a hearing, and a hearing is now scheduled for May 17, 2018.

In the new report, Defendants have also indicated that they will suspend John retroactively, from December 2017 to August 2019. This means that, as a result of the Defendants delaying their own disciplinary action through the entirety of this semester, they have induced Plaintiff to waste even more time and money on credits he has worked toward this semester, which will now be taken away when this suspension is executed.

Despite reopening the investigation, and producing a new report, none of the constitutional violations that are described in Plaintiff's Complaint have been remedied. The University's Code of Conduct does not define a standard of conduct for sexual assault by incapacitation. The new investigation report, just like the original, does not allege any object fact that could show the complaining witness was physically unable to

consent. It instead, lists evidence of *intoxication* and concludes that the complaining

witness was therefore incapacitated.

Plaintiff has now filed a Motion for Preliminary Injunction in order for the Court

to have the opportunity to hold a trial on the merits of his claims that the disciplinary

action against him is unconstitutional and discriminatory. Now that Defendants have

concluded their "re-investigation" of the facts in John's case, and that they have

scheduled a hearing in order to suspend him, John is asking for an order enjoining the

Defendants from continuing this disciplinary action against him. The nature of the harm

that occurs to an undergraduate student if he is suspended from college is irreparable, and

in light of that, and the likelihood of John's success on the merits of his due process

claims, a preliminary injunction should be issued in this case to avoid the unjustified

harm that would otherwise occur.

## II.     ARGUMENT

Plaintiff meets each of the four prerequisite elements for a preliminary injunction.

*See Valley v. Rapides Parish School Bd.*, 118 F.3d 1047, 1051 (5th Cir. 1997).

Plaintiff has (1) a substantial likelihood of success on the merits of his claim, there is

(2) a substantial threat that he will suffer irreparable injury without an injunction, (3)

the threatened harm outweighs any potential harm to the Defendants, and (4) a

preliminary injunction would not harm the public interest. *Id.* In support thereof

Plaintiff shows the following:

**A.      Plaintiff has a substantial likelihood of success on the merits.**

Plaintiff has put forward claims alleging violations of substantive and procedural

due process, and discrimination under Title IX. Plaintiff has a substantial likelihood of

success on the merits of each of those claims. [1]

i.      *The University's standard for incapacitation in sexual assault cases is
        unconstitutionally vague.*

The definition of incapacitation provided by the University in their Student

Code of Conduct, and applied to John in this case, is meaningless.[2] As such, it

provides no standard at all to which a student can be on notice of what conduct is or is

not allowed, and is therefore vague. *Houston Federation of Teachers, Local 2415 v.*

*Houston Independent Sch. Dist.*, 251 F. Supp. 3d 1168, 1181 (S.D. Tex. 2017)

(holding a vague standard specifies no standard at all). A school cannot justify the

punishment of a student under rules that are so vague they are completely absent of

meaning. *See Marco Outdoor Adv., Inc. v. Regional Transit Auth.*, 489 F.3d 669, 672

(5th Cir. 2007) (holding that an egregious government action is barred by the

requirements of substantive due process even if implemented by fair procedures); *and*

*Bethel Sch. Dist. No. 403 v. Fraser*, 478 U.S. 675, 686 (1986) (implying school

---

[1] A Plaintiff must state a prima facie case in order to show a likelihood of success on the merits. *Nevada v. U.S. Dep. of Labor*, 218 F.Supp.3d. 520, 527 (E.D. Tex. 2016). Many of the issues and arguments in this section are therefore shared with Plaintiff's Response to Defendant's Motion to Dismiss under Rule 12(b)(6).

[2] **Incapacitation:** A state of being that prevents an individual from having the capacity to give consent. For example, incapacitation could result from the use of drugs or alcohol, a person being asleep or unconscious, or because of an intellectual or other disability." Dkt 1. ¶ 24.

disciplinary policies must be held to some standard of specificity, although not to the same degree as criminal laws.). Rules that have no meaning invoke both the substantive and procedural prongs of the due process guarantee. *Papachristou v. City of Jacksonville*, 450 U.S. 156, 162 (1972). An arbitrary government action offends substantive due process, and standards of conduct that have no meaning offend the notice requirement of procedural due process. *Id.*

The University of Texas's definition of incapacitation is logically meaningless because it is circular; the root of the word incapacitation has been used to define the term. A rule which essentially states, "incapacitation is when you don't have capacity," provides no more descriptive value as to the meaning of incapacitation than would a blank space on the page.

Nobody could know what that standard of incapacitation means. On its face, anyone reading the rule, trying to follow the rule, or enforcing the rule must necessarily guess at the meaning of "incapacitation. Plaintiff has referred to repeated instances of the Defendants engaging in exactly that type of guesswork during this and other disciplinary cases. Dkt. 1 at ¶ 73 (quoting the President of the University and a Title IX department investigator giving different definitions of the term "incapacitation" during the adjudication of the same sexual assault accusation); and Dkt. 1 at ¶ 54-64 (referencing the 3-4 different revisions of the investigation report confusing the term intoxication with incapacitation in various sections).

A meaningless definition of intoxication also made it impossible for John to be on notice that having consensual sex with a person, whose objective behavior

appeared to suggest only possible intoxication, could be a rule violation. The rules do

not provide notice that notice that a person who is intoxicated could be considered

incapacitated under University rules. It is not illegal, not immoral, and not at all

abnormal in the context of 18-22 year old college students. In the absence of specific

language in the rule indicating otherwise, the University's action here represents a

vague application of their rule's to John's alleged conduct.

For these reasons Plaintiff has a likelihood of success on the merits of his due

process claim. The Defendants rule is vague on its face because it provides no

standard for incapacitation at all. As applied to the Plaintiff, when the worst version

of the facts alleged against him amount to an allegation that he had sex with a person

who was intoxicated, the rule is vague because it does not put him on fair notice that

his conduct could be considered a rule violation.

John is being prosecuted by the University for sexual assault because he had

sex with another student who was intoxicated. The complaining witness, when asked,

has gone out of her way to indicate she was *not* unconscious, and instead describes

elements of intoxication.  If the University wants to make it against the rules for

students to have sex while they are intoxicated, then they need to give their students,

including Plaintiff, fair notice of that. The University's rules failing to provide fair

notice to any student as to what the meaning of incapacitation is, and for failing to

provide John any notice that having consensual sex with an intoxicated student could

be a rule violation, is a procedural due process violation.

In addition to procedural due process, the vagueness issues in this particular

case show a likelihood of success on claims of substantive due process violations as well. The punishment sought, and the circumstances incident to this disciplinary action raise the Defendants conduct to a substantive violation.

A violation of substantive due process "involves the exercise of government power without reasonable justification." *Tun v. Whitticker*, 398 S.W.3d 899, 902 (7th Cir. 2005). A substantive due process violation "occurs when the Defendants act in an extraordinary departure from established norms." *Brown v. Plainfield Community Consol. Dist. 202*, 522 F.Supp.2d. 1068, 1076-77 (N.D. Ill. 2007). A Plaintiff must meet a high burden to show a substantive due process violation, but when a University's disciplinary conduct shocks the conscious, a substantive due process violation occurs. *Id.*

In this case, it shocks the conscious that the University would so recklessly, yet at the same time so zealously, pursue a punishment that causes such significant harm to the Plaintiff for the rest of his life. Plaintiff has alleged facts which show the University withheld exculpatory evidence, and made last second alterations to the shoddy logic and analysis in their investigation report, all in an effort to enforce a rule which specifies no standard at all. This conduct is shocking.

The University has the Plaintiff's future squarely in the palm of their hands in this disciplinary process, and the fact that the University would to these great lengths to enforce a rule to which they themselves cannot meaningfully define when asked is unconscionable.

*ii.     The University was biased against John Doe because he is male.*

John Doe has a substantial likelihood of success on his Title IX claim for

selective enforcement caused by gender discrimination. The selective enforcement

framework for school liability under Title IX does not consider the students

culpability, but asks whether the University's "decision to initiate [disciplinary]

proceedings," was "affected by the charged student's gender." *Plummer v.*

*University of Houston*, 860 F.3d. 767, 777 (5th Cir. 2017) (citing *Yusuf v. Vassar*

*Coll.*, 35 F.3d. 709 (2d Cir. 1994). John's gender is the only reason the University

proceeded with this case past the initial report stage.

Recently the Second Circuit held that a student was permitted to proceed on

Title IX claims under this general framework when he alleged he was wrongfully held

responsible for sexual assault by his school, and the school was "in the midst of a

public campaign criticizing its alleged weak response to female students' complaints of

sexual assault by males." *Id.* at 778 (citing *Doe v. Columbia Univ.*, 831 F.3d 46, 50-59

(2d Cir 2016). The court reasoned it "is entirely plausible that the University's

decision-makers and its investigators were motivated to favor the accusing female over

the accused male, so as to protect themselves and the University from accusations that

they had failed to protect female students from sexual assault." *Columbia* at 57.

Every public institution in this country is under the microscope of public

opinion regarding the way they handle sexual assault accusations. The Defendants have

prioritized their standing in the court of public opinion over fairness toward male

students in their disciplinary process. When these sort of political motivations

manifests themselves as bias against male students, that conduct is actionable, intentional gender discrimination under Title IX. *Columbia* at 50-59.

The University of Texas has also very publically revealed their intent to discriminate against males and masculinity.[3]  The University has apparently identified that masculinity comes in two forms: healthy or unhealthy. "MasculinUT is a project by Voices Against Violence in the counselling and Mental Health Center… We aim to promote healthy masculinities on the UT Austin campus through public health events, workshops, and other forms of student involvement." This initiative is designed to reduce the prevalence of what they consider problematic "masculinity" on campus.

This is all overtly discrimination on the basis of gender. There is no companion initiative currently pending to reduce problematic femininity on campus. The University has indicated in this campaign that there is something inherently wrong with masculinity, and the whole point of this initiative is to try to "fix" the problems with "male-ness." The Dean of Students and the Title IX department at UT are partners in the MasculinUT campaign, and their participation in this program evidence their adherence to this biased worldview.

Defendants, through the Office of the Dean of Students and the Title IX department, chose to enforce their sexual assault policy against the male student and not against female student in this case. The facts in Plaintiff's Complaint show that two intoxicated students had sex in the complaining witness's bedroom that night, however.

---

[3] The University of Texas, Counselling and Mental Health Center, MasculinUT, Healthy Masculinities Project, available at https://cmhc.utexas.edu/vav/vav_masculinut.html.

9

Dkt. 1 at ¶ 12. If the University's standard is that intoxication alone voids freely given

consent, then Plaintiff was unable to consent under that standard as well.

The University's proceeding against the Plaintiff and not the female student is a

result of gender bias.

**B.  In the absence of an injunction Plaintiff will suffer irreparable injury.**

John is asking for a preliminary injunction to avoid irreparable harm that

would otherwise occur during the pendency of this litigation.

An irreparable injury is one which cannot be compensated by money damages.

*Deerfield Med. Ctr. v. City of Deerfield Beach*, 661 F.2d. 328, 338 (5th Cir. 1981). An

irreparable injury can include a delay in obtaining public education in certain

circumstances. *See Fisher v. Texas*, 556 F.Supp.2d 603, 609 (W.D.Tex. 2008) (holding

that a delay in obtaining admission to a public school can be irreparable when a person

has no comparable opportunities elsewhere).

John has no comparable opportunities elsewhere. He has worked for 3 years

toward a particular degree from UT. As a result of the Defendant's actions in this case

however, a bar has been placed on his student account and his ability to request

transcripts and records from UT has been blocked. His credits, and his progress toward

an undergraduate degree have been frozen in time by this disciplinary process. Not only

can he not finish his degree at UT while this disciplinary process is pending, he cannot

use the credits he has already earned to take classes at a different school. When the

suspension to the University intends to impose against him is enforced, he will continue

to be harmed by this delay until the suspension is lifted. The longer that the delay

10

persists, the more irreparable harm John will suffer.

The delay in John's education does not only cause him to incur lost wages. It will fundamentally change the opportunities John receives during his career. John will not receive the same offers from recruiters, the same interview opportunities from companies, or the same career connections as a result of this delay in the completion of his undergraduate degree.

The requirements of procedural and substantive due process are designed to protect the wrongful revocation of exactly these types of liberties: the pursuit of life and happiness, a productive career, and a reasonable livelihood. Due to the irreparable harm that is occurring while this disciplinary action continues at the University, injunctive relief is the only way to adequately protect these interests while this lawsuit is pending.

## C. **The threatened injury outweighs any potential harm to the non-movant.**

The University is not threatened by any injury if a preliminary injunction is granted.

Whether the threatened injury outweighs potential harm to the non-movant is fact question that requires the court to balance the interests of the opposing parties. *Valley v. Rapides Parish School Bd.*, 118, F.3d 1047, 1056 (5th Cir. 1997) (where the court held a wrongful termination that resulted from an unfair hearing far outweighed any harm that would occur from an injunction reversing the termination.)

John's enrollment at UT is the status quo, the University suffers no injury by being required only to maintain the status quo during the pendency of litigation.

11

**D. A preliminary injunction would not harm the public interest.**

The movant must show that the granting of a preliminary injunction will not undermine the public interest. *Id.*

The public has an interest in ensuring their schools are carrying out disciplinary policies that comport with the requirements of procedural and substantive due process. The public also has an interest in ensuring that their public institutions of higher learning are free from discrimination. A preliminary injunction to prevent a school from violating these laws serves the public interest, it does not harm it.

## III.   CONCLUSION

Plaintiff has shown a substantial likelihood of success on the merits of his due process and Title IX claims. The impending harm that threatens the Plaintiff has no remedy at law, and there is no countervailing burden on the Defendants or the general public if a preliminary injunction were ordered. Plaintiff's Motion for Preliminary Injunction should be granted for these reasons.

## Certificate of Service

I certify that on May 8, 2018 the foregoing document was served was filed and

served via the Court's CM/ECF document filing system, which provided a copy to

counsel for Defendants.


| | |
|---|---|
| Sean Flammer | Shannon H. Ratliff |
| Christine Smith | Texas Bar No. 16573000 |
| H. Carl Myers | Lisa A. Paulson |
| Office of the Attorney General | Texas Bar No. 00784732 |
| 300 W 15th Street | DAVIS, GERALD & CREMER, P.C. |
| Austin, TX 78701 | 300 West 6th Street, Suite 1830 |
| (512) 463-2120 | Austin, Texas 78701 |
| Sean.flammer@oag.texas.gov | T: 512-493-9600 |
| Christine.smith@oag.texas.gov | F: 512-493-9625 |
| Carl.mysers@oag.texas.gov | shratliff@dgclaw.com |
| *Attorneys for Defendants UT* | lapaulson@dgclaw.com |
| *and Gregory Fenves in his official* | *Attorneys for Dr. Gregory Fenves,* |
| *capacity* | *In His Individual Capacity* |

*/s/Brian Roark*
Brian Roark

1