IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| JOHN DOE, § | | |
| § | | |
| Plaintiff, § | | |
| § | | |
| v. § | | 1:18-CV-85-RP |
| § | | |
| THE UNIVERSITY OF TEXAS § | | |
| AT AUSTIN, et al., § | | |
| § | | |
| Defendants. § | | |

**ORDER**

Before the Court are Plaintiff John Doe's motion for a preliminary injunction, (Dkt. 16), and the motion to dismiss filed by Defendants The University of Texas at Austin and Dr. Gregory Fenves in his official capacity as President of The University of Texas at Austin (collectively, "the UT Defendants"), (Dkt. 7).[1] The Court held a hearing on the motions on May 14, 2018. After considering the briefs, the evidence, and the relevant law, the Court finds that the motion for preliminary injunction should be denied.

**I. BACKGROUND**

Plaintiff John Doe is an undergraduate student at the University of Texas at Austin ("UT"). (Compl., Dkt. 1, ¶ 1). He is currently subject to UT's disciplinary process. He has been accused of violating UT's policy prohibiting sexual assault for having sex with a female UT student ("Jane Roe"). (*Id.* ¶¶ 18–19). UT has scheduled a disciplinary hearing on the matter for this Thursday, May 17, 2018. (Mot. Prelim. Inj., Dkt. 16, at 1). Doe asks that the Court enjoin UT from holding the hearing, (*id.* at 2), on the ground that UT's investigation of him and decision to move forward with disciplinary proceedings (1) was initiated in violation of Title IX, 20 U.S.C. § 1681, *et seq.* ("Title

---

[1] The motion to dismiss filed by Dr. Gregory Fenves in his individual capacity, (Dkt. 9), will be addressed in a separate order.

IX"), and (2) violates his Fourteenth Amendment right to be free from the deprivation of liberty without due process of law (both substantive due process and procedural due process). (Compl., Dkt. 1, at ¶¶ 65–97).

## II. LEGAL STANDARD

### A. Motion to Dismiss

Under Federal Rule of Civil Procedure Rule 12(b)(1), a defendant may move for dismissal of the case for lack of subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). A motion to dismiss for lack of subject-matter jurisdiction must be considered before any other challenge. *See Steel Co. v. Citizens for Better Environment*, 523 U.S. 83, 94–95 (1998) ("The requirement that jurisdiction be established as a threshold matter . . . is inflexible and without exception."). "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). On a Rule 12(b)(1) motion, "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *MDPhysicians & Assocs., Inc. v. State Board of Ins.*, 957 F.2d 178, 181 (5th Cir. 1992).

### B. Preliminary Injunction

A preliminary injunction is an extraordinary remedy. The decision to grant one is to be treated as an exception rather than the rule. *Valley v. Rapides Parish Sch. Bd.*, 118 F.3d 1047, 1050 (5th Cir. 1997). This remedy is granted only if a plaintiff demonstrates (1) likelihood of success on the merits; (2) irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in the plaintiff's favor; and (4) that an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The party seeking injunctive relief must "carr[y] the burden of persuasion on all four requirements." *PCI Transp. Inc. v. Fort Worth & W. R.R. Co.*, 418 F.3d 535, 545 (5th Cir. 2005).

### III. DISCUSSION

Doe's procedural due process claim is not ripe. With respect to Doe's substantive due process and Title IX claims, Doe has not demonstrated that he is likely to succeed on the merits. Therefore, the Court will dismiss the procedural due process claim and deny the motion for a preliminary injunction.[2]

*A. Procedural Due Process*

The procedural due process claim is not ripe. "The ripeness requirement originates from Article III of the United States Constitution." *TOTAL Gas & Power N. Am., Inc. v. Fed. Energy Regulatory Comm'n*, 859 F.3d 325, 333 (5th Cir. 2017). Ripeness is therefore "a constitutional prerequisite to the exercise of jurisdiction." *Shields v. Norton*, 289 F.3d 832, 835 (5th Cir. 2002). When evaluating ripeness, courts must evaluate two key considerations. Those "key considerations are 'the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.'" *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 833 F.2d 583, 586 (5th Cir. 1987) (quoting *Abbott Laboratories v. Gardner*, 387 U.S. 136, 149 (1967)). "A case is generally ripe if any remaining questions are purely legal ones; conversely, a case is not ripe if further factual development is required." *Id.* "Ripeness separates those matters that are premature because the injury is speculative and may never occur from those that are appropriate for judicial review." *United Transp. Union v. Foster*, 205 F.3d 851, 857 (5th Cir. 2000).

A Section 1983 claim based on a violation of procedural due process is not ripe until the process complained of has reached its completion. In such cases, "[t]he constitutional violation actionable under [Section] 1983 is not complete when the deprivation occurs; it is not complete unless and until the State fails to provide due process." *Zinermon v. Burch*, 494 U.S. 113, 126 (1990); *see also id.* ("Therefore, to determine whether a constitutional violation has occurred, it is necessary to

---

[2] The UT Defendants have moved to dismiss all of Doe's claims in their motion to dismiss. In this order the Court only addresses the ripeness argument; it will address the remaining parts of the motion in a separate order.

ask what process the State provided, and whether it was constitutionally adequate."). If the state has not yet provided all of the process available, there is insufficient factual development for a court to determine whether that procedure was constitutionally adequate. *See Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000) ("If there is a process on the books that appears to provide due process, the plaintiff cannot skip that process and use the federal courts as a means to get back what he wants."); *Minix v. Frazier*, 4 F. App'x 230, 231 (6th Cir. 2001) ("[T]he alleged availability of additional remedies indicates that [the plaintiff's] procedural due process claims are still premature."). Because the remedy for a procedural due process violation is more process, it makes little sense to adjudicate such a claim before the process is complete. *See Perry v. Sindermann*, 408 U.S. 593, 603 (1972) (finding that if a professor did have a property interest in his employment, the proper remedy would be a hearing, not reinstatement); *Neuwirth v. Louisiana State Bd. of Dentistry*, 845 F.2d 553, 560 n.12 (5th Cir. 1988) (noting that if the plaintiff's sole claim was a procedural due process one, he "would be entitled to no more than another hearing before the Board, because that is the remedy for due process violations").

  Doe has not pointed to any cases in which a court has found a procedural due process claim ripe before the procedure has finished running its course. And at least one federal district court has dismissed as unripe a procedural due process claim arising from a college disciplinary proceeding with many similarities to this one when that claim was filed before the university's process was complete. *See Peloe v. Univ. of Cincinnati*, No. 1:14-CV-404, 2015 WL 728309, at *8 (S.D. Ohio Feb. 19, 2015) ("The disciplinary proceedings are not complete and no disciplinary penalty has been imposed upon Peloe. As such, any procedural due process claim is not ripe."); *see also id.* at *7 ("Peloe filed this suit after the first step of a multi-step procedure, denying [the university] the opportunity to provide him procedural due process."). For these reasons, Doe's procedural process claim will not be ripe until the UT disciplinary process is complete.

*B. Title IX*

Assuming without deciding that Doe's remaining claims are ripe,[3] he has not put forth sufficient evidence to demonstrate a likelihood of success on the merits for either claim sufficient to support a preliminary injunction.

Doe brings a Title IX claim against the UT Defendants alleging that UT's decision to initiate the investigation of him constitutes selective enforcement of its sexual abuse policy in a manner that discriminates against him on the basis of his gender. (Compl., Dkt. 1, ¶¶ 92–94 ("The male student was charged and investigated for rape and the female student was not. The reason for this inequity is gender bias.")). This claim requires showing that "regardless of the student's guilt or innocence, the severity of the penalty and/or the decision to initiate the proceeding was affected by the student's gender." *Yusuf v. Vassar Coll.*, 35 F.3d 709, 715 (2d Cir. 1994); *Plummer v. Univ. of Houston*, 860 F.3d 767, 777 (5th Cir. 2017) (analyzing under the same standard a similar Title IX challenge to the decision to initiate disciplinary proceedings against students accused of violating university sexual assault policy). Because no penalty has been imposed on Doe, his complaint falls under the latter category—he asserts that the decision to begin the proceeding in the first place was affected by his gender.

The sole basis for this contention is that UT initiated a proceeding against Doe but did not bring one against Roe, allegedly because he is a male. (Complaint, Dkt. 1, ¶¶ 92–94). This allegation relies upon a premise that the UT Defendants reject: that UT's definition of "incapacitation" is indistinguishable from intoxication. Doe says that because both he and Roe fell under this definition when they had sex (because they were both intoxicated), the reason for opening a disciplinary proceeding against him while not opening one against Roe is the result of gender discrimination

---

[3] It appears that all factual development needed to fulfill Article III's case or controversy requirement with respect to his substantive due process and Title IX claims has already occurred. His substantive due process claim is a facial challenge to UT's definition of "incapacitation" and would therefore not require an investigation into the particular procedure employed. It is not dependent upon the particular outcome of the hearing. His Title IX claim is based on the fact that UT initiated an investigation.

against him. However, a more plausible explanation for UT's failure to investigate whether Doe was incapacitated when he had sex with Roe exists: there is no evidence that Doe made a complaint to UT alleging that he was incapacitated and therefore unable to effectively consent at the time. The complaint contains no such allegation. The reason UT began its investigation into Doe's behavior in the first place was that it received a complaint about his behavior. (Resp. Mot. Preliminary Injunction, Dkt. 25, at 17). Doe has not put forth evidence to support his conclusory allegation that UT's decision to investigate his behavior as a possible violation of the school's sexual assault policy was motivated by his gender. Indeed, the UT Defendants introduced evidence at the hearing demonstrating that most male students against whom proceedings are initiated are not found responsible. Accordingly, Doe has failed to demonstrate that he is likely to succeed on the merits of his Title IX claim for selective enforcement.

### C. Substantive Due Process

Doe has also failed to show that he is likely to succeed with his substantive due process claim. This claim is rooted in the contention that UT's definition of "incapacitation" is unconstitutionally vague. (Complaint, Dkt. 1, ¶¶ 72–78). Such a challenge must meet a high bar to succeed. And because the rule being challenged is punishable by civil rather than criminal means, the bar is even higher. *See Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498–99 (1982) (noting that the Supreme Court has "expressed greater tolerance of enactments with civil rather than criminal penalties because the consequences of imprecision are qualitatively less severe"). A rule is unconstitutionally vague if it (1) fails to provide sufficient notice "that will enable ordinary people to understand what conduct it prohibits," or (2) authorizes or encourages "arbitrary and discriminatory enforcement." *United States v. Escalante*, 239 F.3d 678, 680 (5th Cir. 2001) (quoting *City of Chicago v. Morales*, 527 U.S. 41, 56 (1999) (plurality)).  Raising the bar higher still is the fact that this challenge to the UT disciplinary rule is a facial one. *See Nat'l Endowment for the Arts v. Finley*, 524 U.S.

569, 580 (1998) ("Facial invalidation is, manifestly, strong medicine that has been employed by the Court sparingly and only as a last resort.").

"A vague standard is one that does not specify any standard at all, not one that merely proscribes a wide range of not-specifically-enumerated behaviors." *Houston Fed'n of Teachers, Local 2415 v. Houston Indep. Sch. Dist.*, 251 F. Supp. 3d 1168, 1182 (S.D. Tex. 2017). "To analyze a facial vagueness challenge, the Court first "must consider whether the ordinance reaches a substantial amount of constitutionally protected conduct." *Roark & Hardee LP v. City of Austin*, 522 F.3d 533, 548 (5th Cir. 2008). Doe has not pointed to any constitutionally protected conduct that is unduly stifled by UT's policy.[4] Accordingly, the challenge will be successful "only if the enactment is impermissibly vague in all of its applications." *Id.* (quoting *Vill. of Hoffman Estates*, 455 U.S. at 494–95). A rule is vague in all of its applications when "it is so indefinite that no one could know what is prohibited" and is therefore "substantially incomprehensible." *Id.*

*Escalante* is illuminating. There, the Fifth Circuit upheld a law challenged as vague that criminalized "careless driving." It defined careless driving by stating: "Any person who drives any vehicle in a careless or imprudent manner, without due regard for the width, grade, curves, corner, traffic and use of the streets and highways and all other attendant circumstances is guilty of careless driving." *Escalante*, 239 F.3d at 680. The statute withstood the vagueness challenge because, although its language was broad, "ordinary people can understand its meaning." *Id.* The court went on to say that the "ubiquitous standard does not defy common understanding but relies on it." *Id.*

Here, Doe challenges UT's definition of "incapacitation." The definition is relevant because "without consent" is a component of the school's definition of rape, and "incapacitation" is listed as

---

[4] Although consensual sex is a constitutionally protected activity, *see, e.g., Lawrence v. Texas*, 539 U.S. 558, 578 (2003), there is no constitutional protection for sex with someone who lacks the capacity to consent, *id.* (noting that the holding does not extend to "persons who might be injured or coerced or who are situated in relationships where consent might not easily be refused"). Additionally, Doe has not put forth any evidence that UT's definition burdens any amount of constitutionally protected behavior—sexual or otherwise. *See Roark & Hardee*, 522 F.3d at 549 n.16 (noting that an argument that the plaintiffs had made regarding vagueness and violation of their Fifth Amendment right would fail as a matter of law because the plaintiffs "provide[d] no useful evidence on the issue.").

one of the situations under which consent is not effective. (Compl., Dkt. 1, ¶¶ 21–24). Incapacitation is itself defined as "A state of being that prevents an individual from having the capacity to give consent. For example, incapacitation could result from the use of drugs or alcohol, a person being asleep or unconscious, or because of an intellectual or other disability." (*Id.* ¶ 24). Doe contends that this definition is impermissibly vague. At the hearing, counsel for Doe argued that the definition is meaningless because it defines a word by using the antonym of that word. However, a reading of cases applying the vagueness standard shows that this alone is not enough. In *Escalante*, for example, careless driving was defined as driving "any vehicle in a careless or imprudent manner." Although the statute's definition of the word "careless" itself included the word "careless," the Fifth Circuit found that it was not impermissibly vague because "ordinary people can understand its meaning." *Escalante*, 239 F.3d at 680. Similarly, the word incapacitation (and the word "capacity") are informed by common understanding. Additionally, the UT Defendants presented evidence at the hearing that all students go through multiple hours of training concerning consent and its various forms and grey areas before beginning classes at UT. They also produced evidence that Doe understood the risk that having sex with someone who is extremely intoxicated may be problematic. He texted Roe the morning after they had sex that he "shouldn't have been so stupid as to not think that what I did could have harmed" her, and he said that he knew "that drunk sex was not a good idea." (Resp. Mot. Prelim. Inj., Dkt. 25, at 6). For these reasons, the Court cannot conclude that Doe is likely to succeed on his claim that UT's definition of incapacitation is so vague that he could not have been on notice that he may have been in danger of violating it under these circumstances.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff John Doe's motion for a preliminary injunction, (Dkt. 16), is **DENIED**. The motion to dismiss his procedural due process claim for lack of ripeness is **GRANTED**. His procedural due process claim is **DISMISSED** without prejudice.

**SIGNED** on May 15, 2018.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE