IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| JOHN DOE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 1:18-CV-85-RP |
| | § | |
| THE UNIVERSITY OF TEXAS | § | |
| AT AUSTIN, et al., | § | |
| | § | |
| Defendants. | § | |

**ORDER**

Before the Court are the motion to dismiss filed by Defendants University of Texas at Austin (the "University") and Gregory Fenves ("Fenves") in his official capacity as president of the University (collectively, the "University Defendants"), (Dkt. 7), and the motion to dismiss filed by Fenves in his individual capacity, (Dkt. 9). The Court held a hearing on Plaintiff John Doe's ("Doe") motion for preliminary injunction on May 14, 2018; many of the same issues raised in the motions to dismiss were addressed there. The Court denied Doe's motion for preliminary injunction by order dated May 15, 2018. (Dkt. 30). In that same order, the Court dismissed Doe's procedural due process claim because it was not ripe. (*Id.*). After reviewing the pleadings, briefing, and relevant law, the Court issues the following order resolving the remaining motions to dismiss.

**I. BACKGROUND**

Doe, a student at the University, brings claims arising under 42 U.S.C. § 1983 and Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, *et seq.* ("Title IX"). His claims are based on the allegations that the University has (1) deprived him of his liberty without due process by employing an unconstitutionally vague definition of the word "incapacitation" in its rule against sexual assault and (2) selectively enforced that rule by beginning an investigation into Doe on the basis of his gender. The investigation was preceded by a complaint from a female University student

1

(referred to in the complaint as Jane Roe), who reported that Doe had sex with her when she was unable to consent. (Compl., Dkt. 1, ¶ 14).

## II. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the [plaintiff's] grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* The Court construes the facts alleged in the complaint "in the light most favorable to the nonmoving party." *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011).

## III. STANDING

The University Defendants challenge Doe's standing to bring these claims, but the Court finds that Doe does have standing. The University Defendants contend that Doe lacks standing because "he has suffered no injury." (Mot. Dismiss, Dkt. 7, at 6).[1] They say that (1) the possible threat of expulsion is too hypothetical to support standing and (2) the only injury he has already

---

[1] The Defendants do not dispute that the other two elements of standing—causation and redressability—are present. *See Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2341 (2014) ("To establish Article III standing, a plaintiff must show (1) an injury in fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision.") (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (internal quotation marks and brackets omitted). The Court is satisfied that the activity complained of is causing Doe's injury and that if he were to obtain the relief he seeks, this injury would be redressed.

suffered as a result of the disciplinary proceedings has been to incur attorney's fees, which are insufficient to confer standing. However, the Court finds both arguments lack merit because being investigated for violation of a university's sexual misconduct policy, which carries the threat of expulsion, constitutes a legally cognizable injury.

To confer standing, an injury must be "concrete and particularized and actual or imminent, not conjectural or hypothetical." *Driehaus*, 134 S. Ct. at 2341 (internal quotation marks omitted). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice." *Lujan*, 504 U.S. at 561. It is true that attorney's fees alone may not constitute an injury for standing purposes. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 108 (1998). However, Doe's injury is more concrete than the alleged injury in *Steel*; he has been defending himself (and has engaged an attorney to help with his defense) in an ongoing investigation, which is more akin to a criminal defendant needing to defend himself from prosecution. In such cases, there is little doubt that the person being prosecuted has sufficient injury to establish standing. In fact, plaintiffs are often determined to have standing to challenge the validity of a statute even when they have not yet been prosecuted. *Driehaus*, 134 S. Ct. at 2342 (recognizing that "the threatened enforcement of a law" can create "an Article III injury"); *see also Roark & Hardee LP v. City of Austin*, 522 F.3d 533, 543 (5th Cir. 2008) (recognizing that when "the threat of enforcement became real as some Plaintiffs actually were noticed for violations and charged under the ordinance," they faced "the real potential of immediate criminal prosecution," which conferred standing to challenge an ordinance). It is unclear whether Doe will be found responsible for violating the University's sexual misconduct policy, and if so, whether he will not be successful after exhausting the University's appeals procedures. However, regardless of the outcome, he has already been sufficiently injured to have standing to bring this suit.

## IV. MERITS

After the dismissal of Doe's procedural due process claim for want of ripeness, the remaining claims before the Court are (1) the constitutional claim (advanced under a substantive due process theory) that the University's definition of "incapacitation" is impermissibly vague and (2) the Title IX claim that the University improperly initiated disciplinary proceedings against Doe because of his gender.[2] Although the complaint does not specify which causes of action are brought against which defendant, the Court is able to discern from the briefing that the sole viable cause of action asserted against Fenves is the constitutional claim,[3] (Compl., Dkt. 1, ¶¶ 72–78), and that this claim is against Fenves in his official capacity only.[4] Accordingly, to the extent the complaint brings claims against Fenves in his individual capacity, those claims are dismissed. Finally, Doe specifies in his complaint that he seeks only injunctive relief from his Section 1983 claim against Fenves in his official capacity. (Compl., Dkt. 1, ¶ 103).[5]

---

[2] Additionally, Doe's constitutional claim grounded in the withholding of evidence is moot. As acknowledged in the complaint, once Doe requested the evidence in question, it was provided to him. (Compl., Dkt. 1, ¶ 55 ("[Plaintiff] was provided the evidence that had previous[ly] been withheld by the University . . . .")). Doe does not dispute this. It is therefore moot.

[3] As Fenves notes in his reply in support of his motion to dismiss, Doe does not dispute that any claims against Fenves regarding Title IX are not viable. A Title IX claim cannot be brought against the president of the University. *See Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 257 (2009) ("Title IX reaches institutions and programs that receive federal funds . . . but it has consistently been interpreted as not authorizing suit against school officials, teachers, and other individuals.").

[4] The injunctive and declaratory relief sought cannot be obtained by suing Fenves in his individual capacity because he has the power to take the actions complained of only in his official capacity. Section 1983 claims seeking injunctive relief against an individual must be brought against the individual in her official capacity. *See, e.g., Anderton v. Texas Parks & Wildlife Dep't*, No. 3:13-CV-01641-N, 2014 WL 11281086, at *4 n.14 (N.D. Tex. Feb. 14, 2014), *aff'd*, 605 F. App'x 339 (5th Cir. 2015) (noting that the appropriate way to seek an injunction pursuant to Section 1983 is "by suing a state official in his official capacity and not in his individual capacity").

[5] If the claim against Fenves in his official capacity sought retrospective relief—damages—it would be barred by the Eleventh Amendment. *Nelson v. Univ. of Texas at Dallas*, 535 F.3d 318, 320 (5th Cir. 2008) (finding that when the president of a public university was sued in his official capacity, the suit against him was "treated as one against the State of Texas which, absent an exception to immunity, is barred by the Eleventh Amendment"); *id.* (noting the *Ex parte Young* exception to Eleventh Amendment immunity involving "claims for prospective relief against state officials who have been sued in their official capacities").

*A. Constitutional Claim*

Doe brings a claim against Fenves in his official capacity pursuant to Section 1983 for the alleged substantive due process violation. In its order denying the motion for preliminary injunction, the Court found that Doe was not likely to succeed with his vagueness challenge to the University's definition of "incapacitated." (Dkt. 30, at 6). It fails to state a claim for many of the same reasons.

The nature of the constitutional harm asserted by Doe stems from the University's definition of the word "incapacitation." Doe alleges that because that definition was so vague as to be meaningless, his right to due process was violated when the University applied the definition to him by pursuing disciplinary action against him. (Compl., Dkt. 1, ¶¶ 71–74). The definition is relevant because "without consent" is a component of the school's definition of rape, which Doe was accused of committing by the University's investigators, and "incapacitation" is listed as one of the situations under which consent is not effective. (Compl., Dkt. 1, ¶¶ 21–24). Incapacitation is itself defined as: "A state of being that prevents an individual from having the capacity to give consent. For example, incapacitation could result from the use of drugs or alcohol, a person being asleep or unconscious, or because of an intellectual or other disability." (*Id.* ¶ 24).

A challenge to a rule on vagueness grounds must clear a high hurdle to succeed. A rule is unconstitutionally vague if it (1) fails to provide sufficient notice "that will enable ordinary people to understand what conduct it prohibits," or (2) authorizes or encourages "arbitrary and discriminatory enforcement." *United States v. Escalante*, 239 F.3d 678, 680 (5th Cir. 2001) (quoting *City of Chicago v. Morales*, 527 U.S. 41, 56 (1999) (plurality)).  Rules like this one that are punishable by civil rather than criminal means pose an even greater challenge to the plaintiff. *See Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498–99 (1982) (noting that the Supreme Court has "expressed greater tolerance of enactments with civil rather than criminal penalties because the consequences of imprecision are qualitatively less severe"). The Supreme Court has explicitly

recognized that disciplinary rules at schools do not need to be as detailed as criminal statutes do. *Bethel Sch. Dist. No. 403 v. Fraser*, 478 U.S. 675, 686 (1986) ("Given [a] school's need to be able to impose disciplinary sanctions for a wide range of unanticipated conduct disruptive of the educational process, the school disciplinary rules need not be as detailed as a criminal code which imposes criminal sanctions."). Raising the bar higher still is the fact that this challenge to the University's disciplinary rule is a facial one. *See Nat'l Endowment for the Arts v. Finley*, 524 U.S. 569, 580 (1998) ("Facial invalidation is, manifestly, strong medicine that has been employed by the Court sparingly and only as a last resort.").

"A vague standard is one that does not specify any standard at all, not one that merely proscribes a wide range of not-specifically-enumerated behaviors." *Houston Fed'n of Teachers, Local 2415 v. Houston Indep. Sch. Dist.*, 251 F. Supp. 3d 1168, 1182 (S.D. Tex. 2017). "To analyze a facial vagueness challenge, the Court first "must consider whether the ordinance reaches a substantial amount of constitutionally protected conduct." *Roark & Hardee LP v. City of Austin*, 522 F.3d 533, 548 (5th Cir. 2008). Doe has not alleged that UT's policy has unduly stifled any constitutionally protected conduct.[6] Accordingly, the challenge will be successful "only if the enactment is impermissibly vague in all of its applications." *Id.* (quoting *Vill. of Hoffman Estates*, 455 U.S. at 494–95). A rule is vague in all of its applications when "it is so indefinite that no one could know what is prohibited" and is therefore "substantially incomprehensible." *Id.*

*Escalante* is illuminating. There, the Fifth Circuit upheld a law challenged as vague that criminalized "careless driving." It defined careless driving by stating: "Any person who drives any vehicle in a careless or imprudent manner, without due regard for the width, grade, curves, corner,

---

[6] Although consensual sex is a constitutionally protected activity, *see, e.g., Lawrence v. Texas*, 539 U.S. 558, 578 (2003), there is no constitutional protection for sex with someone who lacks the capacity to consent, *id.* (noting that the holding does not extend to "persons who might be injured or coerced or who are situated in relationships where consent might not easily be refused"). Additionally, Doe has not put forth any evidence that UT's definition burdens any amount of constitutionally protected behavior—sexual or otherwise. *See Roark & Hardee*, 522 F.3d at 549 n.16 (noting that an argument that the plaintiffs had made regarding vagueness and violation of their Fifth Amendment right would fail as a matter of law because the plaintiffs "provide[d] no useful evidence on the issue.").

traffic and use of the streets and highways and all other attendant circumstances is guilty of careless driving." *Escalante*, 239 F.3d at 680. The statute withstood the vagueness challenge because, although its language was broad, "ordinary people can understand its meaning." *Id.* The court went on to say that the "ubiquitous standard does not defy common understanding but relies on it." *Id.*

Here, Doe challenges the University's definition of "incapacitation" as impermissibly vague. He asserts in his complaint and briefing that the definition is meaningless because it defines the word "incapacitation" by using the word "capacity." (*Id.* ¶¶ 70 (contending the University's definition of incapacitation is "completely without meaning"); 72 ("UT's definition of incapacitation is circular; it has no meaning; and it specifies no meaning. A term cannot define itself."); *see also* Resp. University Mot. Dismiss, Dkt. 8, at 10 ("[The] definition [of capacity] is logically meaningless because it is circular; the root of the word incapacitation has been used to define the term.")). However, a reading of cases applying the vagueness standard shows that this alone is not enough. In *Escalante*, for example, careless driving was defined as driving "any vehicle in a careless or imprudent manner." Although the statute's definition of the word "careless" itself included the word "careless," the Fifth Circuit found that it was not impermissibly vague because "ordinary people can understand its meaning." *Escalante*, 239 F.3d at 680. Similarly, the word "incapacitation" and the word "capacity" are informed by common understanding. The capacity to consent is a state of mind, and it is clear from the examples in the second sentence of the University's definition that a person's state of mind could be altered in a number of ways to create a situation in which consent is not possible because the person is unable to grant it. (*See* Compl., Dkt. 1, ¶ 24 (noting that "incapacitation could result from the use of drugs or alcohol, a person being asleep or unconscious, or because of an intellectual or other disability")). The definition explicitly contemplates the use of drugs or alcohol. (*Id.*). Doe's allegation that a reasonable person would not be on notice that this definition of incapacitation might encompass a situation in which someone was too intoxicated to give consent is simply not

plausible. *See Twombly*, 550 U.S. at 569 (holding that to survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face").

Doe also contends that the University's excessively vague definition of the word "incapacitation" has caused its investigators to equate the word "incapacitation" with the word "intoxication." (*See, e.g.*, Compl., Dkt. 1, ¶ 76 ("The definition causes investigators to conflate intoxication with incapacitation.")). Because of this conflation, the argument goes, it is unfair that Doe is being subjected to discipline for having sex with an intoxicated person, an act he could not have known was not allowed because the definition does not say it is against the University's policy to have sex with someone is intoxicated. However, the substance of the complaint itself, which includes factual allegations that make clear that the University did not conflate the two terms, belies this contention.

For example, the investigator made the case that Roe was intoxicated to the point of incapacitation, (*e.g.*, Compl., Dkt. 1, ¶ 63 (listing "[f]actors that lead the investigators to conclude Jane was intoxicated to the point of incapacitation"); *id.* at ¶ 17 (listing facts found by the investigators, including that Roe was unsteady on her feet, vomited, and blacked out the night of the sexual encounter between Doe and Roe)). This demonstrates an understanding by the investigators that intoxication is not synonymous with incapacitation.[7] Although Doe believes Roe was not incapacitated at the time of the encounter, this dispute is not for the Court to settle. It is sufficient for the purpose of this order to find that, based on the factual allegations set forth in Doe's complaint, he has not shown that the University's definition of "incapacitation" is vague to enough to render it constitutionally inadequate.

---

[7] Doe's pointing out that this phrasing appeared only in a later version of the report and not the original one does not change the fact that it undermines his assertion that the investigators are proceeding with the understanding that intoxication is equivalent to incapacitation.

*B. Title IX Claim*

The briefing has clarified that the Title IX claim is brought only against the University and is the only claim brought against the University. Doe's factual allegations are not sufficient to raise a right to Title IX relief "above the speculative level." *Twombly*, 550 U.S. at 555.

Doe's Title IX selective enforcement claim attacks the University's proceeding on the ground that "the decision to initiate the proceeding was affected by the student's gender." *Yusuf v. Vassar Coll.*, 35 F.3d 709, 715 (2d Cir. 1994); *Plummer v. Univ. of Houston*, 860 F.3d 767, 777 (5th Cir. 2017) (analyzing a Title IX challenge to the decision to initiate disciplinary proceedings against students under the *Yusuf* framework). According to Doe, because both he and Roe were intoxicated at the time they had sex, the University's decision to investigate him but not her can only be explained by the University's discrimination against males. (Compl. ¶¶ 93 ("[T]wo intoxicated college students had sex after a party."); 94 ("The male student was charged and investigated for rape and the female student was not. The reason for this inequity is gender bias."); 96 ("[T]hey both should have been investigated and threatened with suspension, if the school were not discriminating against males.")).

However, the facts set forth in Doe's complaint support a more plausible explanation for the University's decision to investigate Doe and not Roe: she filed a complaint and reported that he sexually assaulted her. Doe has made no such complaint against Roe; indeed, he claims the sex was consensual. As the Supreme Court has made clear, when the facts pleaded are consistent with the plaintiff's claim but also support a more likely explanation of the situation that does not support the claim, a court should grant a 12(b)(6) motion to dismiss. *See Iqbal*, 556 U.S. at 681 (finding that although the plaintiffs' "allegations are consistent with" the plaintiffs' theory of liability, "given more likely explanations, they do not plausibly establish" that theory); *see also id.* at 682 (noting that between the plaintiffs' theory of invidious discrimination and the "obvious alternative explanation"

for the plaintiffs' arrests, "discrimination is not a plausible conclusion") (citation omitted); *Twombly*, 550 U.S. at 567 (concluding that a claim should be dismissed for failure to state a claim where given the facts alleged—the entities' disinclination to enter each other's service territories and increase competition—the theory of conspiracy in violation of antitrust laws was not as likely as the more "natural explanation" that "the former Government-sanctioned monopolists were sitting tight, expecting their neighbors to do the same thing" rather than actively conspiring); *cf. Doe v. Univ. of Colo., Boulder*, 255 F. Supp. 3d 1064, 1079 (D. Colo. 2017) (determining that "if anything, the inference of pro-victim bias is an 'obvious alternative explanation' that overwhelms any potential inference of gender bias" in a case asserting a Title IX claim for selective enforcement) (citation omitted).

Here, the Court does not need to go so far as to find an inference of pro-victim bias to explain the facts alleged; it is enough to note that Roe filed a complaint claiming that she was sexually assaulted and Doe did not. (Reply Mot. Dismiss, Dkt. 7, at 7). Because this explanation of the facts alleged by the complaint is much more plausible than the claim that the University initiated disciplinary action against Doe because of his gender, this claim must be dismissed.

## V. CONCLUSION

For the foregoing reasons, the motions to dismiss, (Dkts. 7, 9), are **GRANTED**. Doe's claims are **DISMISSED**. If Doe wishes to file an amended complaint, he must do so on or before September 14, 2018.

**SIGNED** on August 30, 2018.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE